Argued September 8, 1967, affirmed February 21, 1968

# STATE OF OREGON, *Respondent, v.* JACK DWIGHT McCOY, *Appellant.*

437 P. 2d 734

*George A. Haslett, Jr.,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney.

Before McALLISTER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, HOLMAN, LUSK and WOODRICH, Justices.

LUSK, J.

Defendant has appealed from a conviction of the crime of rape. The sole question is whether the trial court erred in denying defendant's motion to suppress incriminating evidence found by the police in defendant's automobile. Search of the automobile and seizure of the evidence were without a warrant and, defendant contends, violated his rights under the Fourth Amendment.

The prosecutrix is a Cuban refugee who was living in Portland at the time of the alleged crime. According to her testimony the defendant, whom she had never seen before, came to her apartment, lured her into his

automobile with a trumped-up story that he was a doctor and she was required to submit to a medical examination, and drove her out into the country and there raped her in the automobile. Defendant, as a witness in his own behalf, admitted sexual intercourse with the woman but testified it was with her consent.

On the day of the occurrence the prosecutrix complained to the Portland police and gave them a description of the automobile and its license number. With this information the police were able to identify the defendant as the owner of the automobile and locate his residence and business address. They secured a warrant for his arrest on a charge of rape and arrested him in his shop in Portland shortly after 5:30 p.m. Defendant's automobile was at that time parked in the street about ten feet from the shop. The officers placed the defendant in a police car, which was parked directly behind the defendant's car, and in his presence radioed for a tow truck. The officers arrived with the prisoner at the police station about 6:30 p.m. and the defendant's car arrived at the police garage at 6:35 p.m. and the search of the car commenced approximately at that time. The incriminating evidence uncovered by the search consisted of human hair, like that of the prosecutrix, found in vacuum sweepings, and a rag with semen on it which the prosecutrix testified the defendant used to wipe himself with after he raped her.

At the hearing on the motion to suppress one of the officers testified that their chief interest was in fingerprints, that it was raining that evening and the car was taken to the garage to place it "out of the weather, the elements," and that they seized the car because "I felt this was an instrument of the crime," and "[t]owed it in as evidence."

■ It is now firmly established that in determining the validity of a warrantless search "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable": *United States v. Rabinowitz,* 339 US 56, 66, 70 S Ct 430, 94 L ed 653, 660 (1950). See, also, *Cooper v. California,* 386 US 58, 59, 87 S Ct 788, 17 L ed 2d 730 (1967); *State v. Ramon,* 248 Or 96, 432 P2d 507 (1967); *State v. Frazier,* 245 Or 4, 418 P2d 841 (1966). The "standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application": *Ker v. California,* 374 US 23, 33, 83 S Ct 1623, 10 L ed 2d 726 (1963); whether a search is reasonable depends upon the facts and circumstances of each case: *Cooper v. California,* supra, 386 US at 59; *Harris v. United States,* 331 US 145, 150, 67 S Ct 1098, 91 L ed 1399 (1947); *Go-Bart Co. v. United States,* 282 US 344, 357, 51 S Ct 153, 75 L ed 374 (1931).

■ Contrary to earlier rulings, it is now held that mere "evidentiary materials," as distinguished from the fruits of, or implements used to commit, a crime are among the objects for which a search may be made: *Warden, Maryland Penitentiary v. Hayden,* 387 US 294, 87 S Ct 1642, 18 L ed 2d 782 (1967).

We deal here with the search of an automobile. In the *Cooper* case the court said that "searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in the search of a home, a store, or other fixed piece of property." 386 US at 59. As Chief Justice Weintraub, speaking for the court, said in *State v. Boykins,* 50 NJ 73, 232 A2d 141, 145 (1967): "No discussion of crime can ignore the automobile, or the fact that the incidence of crime is

hinged directly to the amount of privacy we accord it."

■ It has long been recognized that a warrantless search may be made as an incident of a lawful arrest. *State v. Chinn,* 231 Or 259, 266, 373 P2d 392 (1962), and cases there cited. See Annotation, 4 L ed 2d 668. Traditionally, such a search has been said to be necessary in order to secure the safety of the police and the custody of the prisoner, as well as to enable the police to gather the fruits and implements of the crime and to prevent the destruction of evidence. *State v. Chinn,* supra, 231 Or at 267. In the recent case of *Preston v. United States,* 376 US 364, 84 S Ct 881, 11 L ed 2d 777 (1964), the court said:

> "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime —things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." 376 US at 367.

It will be noticed that the court spoke of "contemporaneous searches." Similarly, this court in the *Chinn* case said that the search must be "close to the arrest both in time and in space, viz., in the physical area searched." 231 Or at 267.

Defendant relies upon the *Preston* case. This was a prosecution for conspiracy to rob a bank. Preston and two companions were arrested by the police in a parked automobile at three o'clock in the morning after the police had received a telephone complaint that they had been there since ten o'clock the evening before. They were arrested for vagrancy, searched for weap-

ons and taken to the police station. The car, which had not been searched before, was taken to a garage where it was searched after the men had been booked at the station. Two loaded revolvers and other articles of an incriminating character were found in the car and admitted in evidence on the trial over timely objections of the petitioner.

In an opinion by Mr. Justice Black a unanimous court said that the justifications, above referred to, for a warrantless search were absent where a search is remote in time or place from the arrest, and held that "the search was too remote in time or place to have been made as incidental to the arrest and * * * therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment * * *." 376 US at 368.

The impact of *Preston* must be considered in the light of the decision three years later in *Cooper v. California,* supra. Again the opinion was written by Mr. Justice Black, but the court divided five to four.

Cooper was prosecuted in a California state court for selling heroin. A statute of California provided that any officer making an arrest for narcotics violation shall seize and deliver to the State Division of Narcotic Enforcement any vehicle used to transport or facilitate the possession of narcotics "to be held as evidence until a forfeiture has been declared or a release ordered." The police, having probable cause to believe that defendant's automobile was being so used, impounded it upon his arrest, and a week later searched it without a warrant. Incriminating evidence was found. The validity of the search and seizure was sustained.

The prosecution conceded, and the court appears to have accepted the concession, that the search was not

incidental to an arrest. The Supreme Court agreed with the lower court that " 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it.' " But the court held that "the reason for and nature of the custody may constitutionally justify the search" and distinguished *Preston* because the arrest there was for vagrancy and the arresting officers took the car simply because they did not wish to leave it on the street. The court said: "The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car." On the other hand, in the case then before the court, the officers seized Cooper's car because they were required to do so by state law and seized it because of the crime for which they arrested Cooper, and the subsequent search was "closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." 386 US at 61.

Mr. Justice Douglas, dissenting, argued that the majority either had overruled *Preston, sub silentio,* or that the decision was "a watered-down version" of the Fourteenth Amendment because the case concerned the application of the Bill of Rights to the states.

■ Viewed in the light of *Cooper, Preston* does not support the defendant's position, for the central facts in *Preston* were that the defendant was arrested for vagrancy and both the purpose of the search and the incriminatory evidence found and seized and introduced in evidence were totally unrelated to that offense, as was the purpose of the officers in towing the car away. On the other hand, *Cooper* establishes that a search of an automobile, though remote in time and place from the arrest, may be constitutional where the

officers have taken lawful custody of the automobile for a purpose intimately connected with the crime for which the arrest is made.

Here the officers took custody of the automobile as an instrumentality of the crime, as evidence (photographs of it were introduced in evidence without objection on the trial) and to search it for incriminating evidence of the crime for which the defendant was arrested, and which the officers had reasonable cause to believe the automobile might contain. There can be no question about the officers' good faith, no room for a contention that their "conduct was inconsistent with their declared purpose": *Harris v. United States,* supra, 331 US at 153. Assuming they had time to secure a search warrant, they were not bound to do so, "because the search was otherwise reasonable": *United States v. Rabinowitz,* supra, 339 US at 64.

In view of the nature of the crime charged, to vacuum the car was reasonably considered an essential part of the search—not to have done so might, indeed, have been dereliction of police duty. A vacuum cleaner, it is true, might have been brought to the scene of the seizure for that purpose, but we think this was not required. To tow the car away from a city street was a proper precaution to "insure against any third party's tampering with the evidence," *People v. Webb,* 56 Cal Rptr 902, 424 P2d 342, 355 (1967), and afforded the officers "better conditions for the search," *State v. McCreary,* SD, 142 NW2d 240, 247 (1966). See, also, *State v. Anderson,* Iowa, 148 NW2d 414, 417 (1967).

■ The automobile, as we have said, was not only evidence, but, as well, an instrumentality of the crime: *United States v. Doyle,* 373 F2d 875, 877 (2d Cir 1967) per Medina, J.; *Harris v. Stephens,* 361 F2d 888 (8th

Cir 1966); *Johnson, etc. v. State,* 238 Md 528, 209 A2d 763 (1965); *Abrams v. State,* 223 Ga 216, 154 SE2d 443 (1967); *State v. Anderson,* supra. Cf. *State v. Chinn,* supra, 231 Or at 278. As such, the automobile was subject to seizure and, being in plain sight, no search for it was required, *State v. Riley,* 240 Or 521, 523, 402 P2d 741 (1965); *State v. Johnson,* 232 Or 118, 122, 374 P2d 481 (1962). The *Harris, Johnson* and *Abrams* cases were prosecutions for rape; the *Anderson* case for possession of burglar's tools. In these cases searches held valid were made after the cars were removed from the scene of the arrest and the defendant placed in jail. Cases having similar circumstances in which the searches were sustained are cited in the margin.[1]

In *Johnson v. State,* supra, the search was made several days after the arrest of the defendant and seizure of the car. The court said:

"* * * However, unlike *Preston,* in this case, the automobile, according to the information previously given by Mrs. Haymaker which the officers had reasonable cause to believe was true, had been used as an instrument in the perpetration of the alleged crime; Mrs. Haymaker stated that she had been raped in the back seat. * * * Where there has been a valid arrest, property found in connection with the arrest which tends to establish the commission of the crime charged may be held by the officers for evidence. If the arrest is lawful,

[1] Boyden v. United States, 363 F2d 551 (9th Cir 1966); Price v. United States, 348 F2d 68 (DC Cir 1965); Crawford v. Bannan, 336 F2d 505 (6th Cir 1964); Fraker v. United States, 294 F2d 859 (9th Cir 1961); Bartlett v. United States, 232 F2d 135 (5th Cir 1956); People v. Webb, supra; People v. Robinson, 62 Cal 2d 889, 44 Cal Rptr 762, 402 P2d 834 (1965); Stewart v. People, Colo, 426 P2d 545 (1967); State v. Wood, 197 Kan 241, 416 P2d 729 (1966); State v. McCreary, supra; State v. Houchin, Mont, 428 P2d 971 (1967).

the seizure is lawful, if the property is of an evidentiary nature. (Citing authorities.) The automobile itself could have been offered in evidence at the trial. Having lawfully seized it, the police had the right to examine it after the seizure for evidence in connection with the crime. * * *" 238 Md at 539-540.

In none of the cases just referred to were the traditional grounds for justifying a warrantless search, i.e., the need to secure the safety of the officers and the need to prevent the destruction of evidence, present. But we agree with the Supreme Court of California that these justifications are not exclusive. "Rather, in the language of *Preston* they are simply 'examples' of circumstances which may lead to the conclusion that the search as a whole was *reasonable*." *People v. Webb,* supra, 424 P2d at 350. In *Crawford v. Bannon,* supra, 336 F2d at 507, the court used similar reasoning, and the numerous decisions sustaining warrantless searches following arrest, notwithstanding absence of the "examples," evidence a substantial body of judicial agreement with this view. The matter was well put by Circuit Judge McGowan, dissenting in *Bowling v. United States,* 350 F2d 1002 (DC Cir 1965), before the decision in *Cooper* was rendered. He said:

"*Preston,* it has always seemed to me, is to be read in the light of the central fact that the arrest made there was for vagrancy. It was only after (1) the arrestees had been fruitlessly questioned for some time at the police station, (2) the car had been placed in a garage, and (3) an officer sent to examine it had come back with two loaded revolvers found in the glove compartment, that police were dispatched to the garage with instructions to break into the trunk of the car. It was what was found there that connected the arrestees with the crime of

which they were convicted—conspiracy to commit a bank robbery. Thus, the search in *Preston* was used to convict persons arrested for vagrancy, not of having robbed a bank but of intending to do so in the future. It may well be that this all evokes disquieting echoes of what the framers of the Fourth Amendment had in mind, and that the Supreme Court was right in requiring a greater degree of circumspection in the use of search warrants in these circumstances, although the essential rationale of the holding impresses me as lying much deeper than what the Court had to say about the dangers of escape or of assault with concealed weapons. In Adams v. United States, 118 U.S. App. D.C. 364, 336 F.2d 752 (1964), cert. denied, 379 U.S. 977 (1965), we looked to what was done in *Preston* rather than to what was said, and we upheld a warrantless search presenting neither such danger. See also Price v. United States, No. 18,901, decided June 10, 1965. I think we should do so here because, on the facts of this record, I do not think the search was so remote in either time or place from the arrest as to be invalid.

"As the Supreme Court also said in *Preston*, 'even in the case of motorcars, the test still is, was the search unreasonable.' With the one overriding danger about which the Supreme Court was really concerned in *Preston* wholly absent here, I would have thought the answer to be clear on these facts. The authors of the Fourth Amendment have been spared the ordeal of living in a highly motorized 20th Century, but they, as men not given to ordering the affairs of life by absolutes, would surely have recognized some of its practical necessities." 350 F2d at 1005.

*Adams v. United States*, 336 F2d 752 (1964), cited by Judge McGowan, did indeed hold valid a search as incident to an arrest, notwithstanding, as the court conceded, that when the search was made "there was no danger from unseen weapons or of evidence dis-

appearing from the locked trunk of the car." 336 F2d at 753.

■ The search in *Cooper v. California* was not sustained as an incident of a lawful arrest, for it was not made until a week later. It would seem, therefore, that in the case before us, since the automobile was lawfully seized and held as evidence, its search, under the rationale of *Cooper,* would be sustainable if made at any time while so held. But we need not go so far. The search here was valid as incident of a lawful arrest. That the defendant was not arrested in his car or as he was approaching it, but in his place of business some ten feet distant from the car, is a matter of small moment. *Drummond v. United States,* 350 F2d 983, 987 (8th Cir 1965); *United States v. Francolino,* 367 F2d 1013, 1018 (2d Cir 1966).

The search was not too remote in time or place. It followed the arrest within about an hour immediately upon the arrival of the car at the police garage. It was "substantially contemporaneous with the petitioner's arrest," *Crawford v. Bannan,* supra, 336 F2d at 506; *Fraker v. United States,* supra, 294 F2d at 862; *Bartlett v. United States,* supra, 232 F2d at 139. "The car was obtained incident to and contemporaneous with Trotter's arrest and the subsequent search of the car two hours later was merely part of one continuous act, * * *." *Trotter v. Stephens,* 241 FS 33, 41 (ED Ark 1965), affirmed *sub nom. Harris v. Stephens,* supra. See, also, *Arwine v. Bannan,* 346 F2d 458, 470-471 (6th Cir 1965), cert. den. 382 US 882, 86 S Ct 175, 15 L ed 2d 123.

We conclude that this was a reasonable search. Like the Supreme Court of New Jersey in *State v. Boykins,* supra, "[w]e see no trace of the general warrant. The place to be searched is specific and small—

an automobile," 232 A2d at 146. Judicial sanction of what was done by the police here is no threat to the privacy of law-abiding citizens and can have no tendency to leave them "at the mercy of the officers' whim or caprice," *Brinegar v. United States,* 338 US 160, 176, 69 S Ct 1302, 93 L ed 1879 (1949). On the contrary, it is but to give due weight to the competing value of "the right of the individual to live free from criminal attack in his home, his work, and the streets." *State v. Davis,* 50 NJ 16, 231 A2d 793, 796 (1967).

The judgment is affirmed.

O'CONNELL, J., dissenting.

The majority opinion treats this case as if it were controlled by the Federal constitution, relying upon United States Supreme Court cases which support the conclusion that defendant's constitutional rights were not violated. As a sovereign state, applying its own constitution, Oregon is bound by the decisions of the United States Supreme Court only to the extent that they guarantee a federal constitutional right to the defendant; this court is not bound to follow decisions of the United States Supreme Court which *deny* to our citizens a right which we find guaranteed to them *in our own constitution.*[1]

The majority opinion never discusses the question of whether, under the Oregon Constitution, defendant's interest in privacy should be protected in this case, nor does the majority make any effort to evaluate the decisions which it relies upon. The decisions relied upon

---

[1] This is recognized in Cooper v. California, 386 US 58 at 62, 87 S Ct 788 at 791, 17 L ed2d 730 at 734 (1967), where the court said:

"Our holding, of course, does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so."

are not entitled to be accepted without question. In the long parade of cases involving the Fourth Amendment decided by the Supreme Court of the United States, there are numerous instances in which the court has employed reasoning and reached results subject to widespread criticism and in more than a few cases later repudiated by the court itself.[2]

I would like to believe that in some of those instances this court would not have made the same error. The folly of an unquestioning obeisance to the rea-

---

[2] Some of the criticism of the court is severe. Professor Henry M. Hart, Jr. of the Harvard Law School, in appraising the court's work during the 1958 term, said:

"* * * [F]ew of the Court's opinions, far too few, genuinely illumine the area of law with which they deal. Other opinions fail even by much more elementary standards. Issues are ducked which in good lawyership and good conscience ought not to be ducked. Technical mistakes are made which ought not to be made in decisions of the Supreme Court of the United States. The measured judgment of two thoughtful commentators expressed two years ago has lost none of its force in the two terms which have elapsed since: 'The Court's product has shown an increasing incidence of the sweeping dogmatic statement, of the formulation of results accompanied by little or no effort to support them in reason, in sum, of opinions that do not opine and of per curiam orders that quite frankly fail to build the bridge between the authorities they cite and the results they decree.' It needs to be said with all possible gravity, because it is a grave thing to say, that these failures are threatening to undermine the professional respect of firstrate lawyers for the incumbent Justices of the Court * * *." The Supreme Court—1958 Term, 73 Harv L Rev 84, 100-101 (1959).

Another critic, Professor Philip B. Kurland of the University of Chicago Law School, comments as follows:

"If it is inappropriate to expect elegance from a Court dedicated to egalitarianism, it is not unreasonable to hope for workmanlike quality. It is, nevertheless, an unfulfilled wish. Since example must again suffice, not only the Court's more egregious 'stylistic' faults will be considered here; the failure of the Court to provide guidance for later litigation. In part this is due to the substitution of 'hallowed catchword and formula' in place of reasons." The Supreme Court—1963 Term, 78 Harv L Rev 143, 169 (1964).

soning and pronouncements of the Supreme Court of the United States is demonstrated in our own case of *State v. Cartwright,* 83 Or Adv Sh 141, 418 P2d 822 (1966), *cert. denied,* 386 US 937 (1967), where the majority of the court rested its decision upon the trespass formula pronounced in *Olmstead v. United States,* 277 US 438, 48 S Ct 564, 72 L ed 944, 66 ALR 376 (1928) and *Silverman v. United States,* 365 US 505, 81 S Ct 679, 5 L ed2d 734 (1961), which has recently been repudiated in *Katz v. United States,* 36 USLW 4080 (Dec. 19, 1967).

I believe that it is reasonable to predict that some of the cases relied upon in the majority opinion, particularly *Cooper v. California,* 386 US 58, 87 S Ct 788, 17 L ed2d 730 (1967) are doomed to the same fate as *Olmstead* and *Silverman.*

I would, then, examine the instant case *a priori* to determine whether under our constitution (Art. VII, § 9) defendant has a legitimate claim to the preservation of his privacy.

If it were my choice alone, I would begin by implanting as a cornerstone in the interpretation of our constitution the principle recognized in *United States v. Trupiano,* 334 US 699, 68 S Ct 1229, 92 L ed 1663 (1948) (and later repudiated in *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L ed 653 (1950)) that any search is unlawful if it is practicable for the police to obtain a search warrant. I expressed this view in *State v. Chinn,* 231 Or 259, 288, 373 P2d 392, 401 (1962), but my brethren chose to reject it.

But under any view, a search warrant is required unless "[t]here are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, * * * a magistrate's

warrant for search may be dispensed with."[9] Although this statement was made in 1948, it is still viable today.[10] The exceptions which have been recognized are (1) searches incident to arrest, (2) consensual searches, and (3) searches after seizure authorized by statute (*Cooper v. California, supra*).

The majority opinion concludes that "[t]he search here was valid as incident to a lawful arrest." The only explanation the majority gives for characterizing the search as incident to the arrest is that the car was searched within an hour after the arrest and the arrest was made within ten feet of the car and, therefore, "[t]he search was not too remote in time or place." What difference should it make whether the car was ten feet or ten miles from the place of arrest; what difference whether the search was made one hour or one week after the arrest? Searches incident to arrest are not be tested simply by the tape measure and the clock; the test must relate in some way to the purposes of the Fourth Amendment or our own constitutional counterpart in Art. VII, § 9.

Searches incident to an arrest are permitted only if the circumstances attending the arrest require prompt police action that cannot await the obtaining of a warrant. The reason for the rule is explained

---

[9] Johnson v. United States, 333 US 10, 14-15, 68 S Ct 367, 369, 92 L ed 436, 440-441 (1948). See also Stoner v. California, 376 US 483, 486, 84 S Ct 889, 11 L ed2d 856 (1964); Chapman v. United States, 365 US 610, 615, 81 S Ct 776, 5 L ed2d 828 (1961); Jones v. United States, 357 US 493, 499, 78 S Ct 1253, 2 L ed2d 1514 (1958).

[10] For example, in Preston v. United States, 376 US 364, 367, 84 S Ct 881, 11 L ed2d 777, 780 (1964), the court said:

"* * * [W]e must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made."

in *Preston v. United States,* 376 US 364, 367, 84 S Ct 881, 11 L ed2d 777 (1964):

> "\* \* \* The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control."

The majority opinion notes these "traditional grounds for justifying a warrantless search," but concludes that they are "not exclusive." Relying upon *People v. Webb,* 56 Cal Rptr 902, 424 P2d 342 (1967), the majority treats these "traditional grounds" simply as "examples" of circumstances which may lead to the conclusion that the search is reasonable. No reason is given by the majority for this extension of warrantless searches other than the fact that the extension was recognized in *People v. Webb, supra,* and some other cases.

This reduces the judicial process to a game of citations—a game at which two can play, as the cases cited in the margin will demonstrate.[9] If we propose to extend the permissible limits of warrantless search beyond the exceptions traditionally recognized, we should explain why it is desirable to do so when the

---

[9] The following cases have regarded as illegal a search made of a vehicle where it could not be justified on the so-called "traditional grounds" referred to in the majority opinion: Smith v. United States, 335 F2d 270 (D.C. Cir 1964); United States v. Cain, 332 F2d 999 (6th Cir 1964); Sisk v. Lane, 331 F2d 235 (7th Cir 1964) (dictum); Staples v. United States, 320 F2d 817 (5th Cir 1963); United States v. Stoffey, 279 F2d 924 (7th Cir 1960); Shurman v. United States, 219 F2d 282 (5th Cir 1955); Rent v. United States, 209 F2d 893 (5th Cir 1954); Hart v. United States, 162 F2d 74 (10th Cir 1947).

search of vehicles is involved but not when the search of a house or other private place is involved.

It is clear that if the police, acting without a warrant, had searched defendant's home rather than his car the search would have been illegal. Where, as here, a car is so situated that there is no danger of losing the evidence it contains, it is difficult to understand why the limitations on search applicable to houses should not be applicable to cars.

Apparently the rule we now adopt does not permit the police to make a warrantless search of immobile cars as an incident of arrest in *all* cases—the search must be *reasonable*. But what is the test for reasonableness in these cases? If it is reasonable to search a car ten feet from the place of arrest, why would it not be just as reasonable to search a car ten miles from the place of arrest? And if it is reasonable to search a car one hour after arrest, why would it not be just as reasonable to search it one week after the arrest?

How, then, do we apply this new test of warrantless search predicated solely upon its "reasonableness"? The answer is that it cannot be applied because "reasonableness" in the context of search and seizure is a meaningless term unless we know what standard we are applying. If we begin with the assumption that a search warrant is normally required but that it can be dispensed with under *reasonable* circumstances, we can apply this test and treat as reasonable those searches of vehicles made at the time of the arrest which are necessary to protect the officer or to avoid the loss of the evidence. But if these circumstances are not present, what other circumstances can account for dispensing with a search warrant? I think it will be apparent upon close examination that the rule of search

and seizure of vehicles which the court now adopts is logically alien to the proposition that a search warrant is the basic protection afforded the citizen under our constitution or the federal constitution. The rule now adopted by the court appears to be that once a man is arrested in this state, the police may thereafter search his car (unless, perhaps, it is within the curtilage of his home).

The majority opinion attaches significance to the fact that the automobile was "an instrumentality of the crime." This fact would certainly entitle the police to examine its exterior for fingerprints or perform any other tests *which did not violate defendant's constitutional right of privacy.* But it is difficult for me to understand how the fact that the car was an instrumentality of the crime of rape has any relevance to the question of the legality of a warrantless search of its interior. Using the court's reasoning, the police could also make a warrantless search of a man's bedroom on the ground that it was an instrumentality of the crime of rape.

Implicit in the court's position is the idea that the interior of a car, unlike the interior of a building, is not an enclave of privacy, or if it is, at least, it is not protected against warrantless entry and search to the extent that a building is so protected. It may be conceded that one cannot and does not expect to have the same degree of privacy in a car as he has in his home.[®] This does not prove that there are no areas of privacy within an automobile. A glove compartment in an automobile may be just as important to the owner as a dresser drawer at home in keeping personal effects

---

® For example, the interior of a vehicle is normally more exposed to public view than the interior of a dwelling or other building.

free from public scrutiny. If an item is secreted in a glove compartment or elsewhere in the car, it is entitled to the same protection from warrantless search as items secreted in a home, subject, of course, to the rules of search incident to an arrest applicable to both. The fact that a car, or a home, is the instrumentality of a crime does not vitiate this constitutional protection.

The majority, although electing to rest the present case upon the ground that the search was incident to an arrest, suggests that the search could be sustained on the alternative ground that the automobile, having been lawfully seized and held as evidence, could be lawfully searched under the rationale of *Cooper v. California,* 386 US 58, 87 S Ct 788, 17 L ed2d 730 (1967).

There are a number of reasons why the court should not adopt or endorse *Cooper v. California, supra.* In the first place, it is so ambiguous that it is impossible to state its rationale. As one commentator has said, "it is at best conjecture to predict what will ultimately be the correct interpretation and the proper scope of the *Cooper* decision, as its ambiguity and its departure from the reasoning of *Preston* will doubtless result in a variety of interpretations by the lower courts." The author adds, "[s]hould chaos result it can only be hoped that the Supreme Court will undertake to clarify the problem which it has created."[7]

It is not necessary for us to adopt *Cooper v. California, supra.* By eschewing it we can avoid being drawn into the chaos which the case is almost certain to create. Secondly, even if we are to adopt *Cooper,*

[7] Comment, Constitutional Law: Delayed Search of Accused's Vehicle without Warrant Reasonable under Fourth Amendment, 52 Minn L Rev 533, 540 (1967).

it is distinguishable from the case at bar. In *Cooper* the car was seized because the officers were required to do so by state law. The statute provided that a vehicle used in the violation of the narcotics law was " 'to be *held as evidence* until a forfeiture has been declared or a release ordered.' " (Emphasis supplied by the Court.) The court said that "the reason for and nature of the custody may constitutionally justify the search." 386 US at 60-61. The court then concluded that "[u]nder the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers *for use as evidence in a forfeiture proceeding.*" (Emphasis supplied.) 386 US at 62. Thus the case can be read to pronounce a rule relating only to searches authorized by forfeiture legislation.[9]

But regardless of whether *Cooper v. California, supra,* is given a narrow or broad interpretation, I believe it is indefensible. It permits a warrantless search under circumstances which provide no reasonable argument for making an exception to the search warrant requirement.

As I have already indicated, the confused reasoning in the *Cooper* case is characteristic of the reasoning in many of the opinions of the Supreme Court on the law of search and seizure. I diagnose this confusion as resulting from the failure to maintain a constant and consistent view of the essentiality of the search warrant in protecting the constitutional right of privacy. In some opinions the court sees the search warrant as a *sine qua non* of a legal search unless there are circumstances which justify a search without

---

[9] It is therefore unnecessary for us to decide whether such legislative authorization would render the search valid under our constitution.

it. In other opinions the court tests the validity of a search solely upon the basis of its "reasonableness," a test which is not related to the search warrant requirement and apparently to be applied as if the search warrant requirement did not exist.

This inconsistency was spawned by *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L ed 653 (1950), where the court held that a search could be reasonable even though it was practicable for the police to obtain a warrant. This left the test for the legality of searches and seizures at large without any standard for determining what was reasonable and wholly without regard to the need for the judicial scrutiny provided by a search warrant. Although the test for reasonableness of a search was thus separated from the warrant requirement, the court on occasion continues to use language suggesting that a search warrant is necessary unless there is some compelling necessity for dispensing with it.

To avoid this kind of confusion, I would suggest that this court adopt the principle that a warrantless search is unreasonable unless it is impracticable for the police officer to obtain a search warrant. To be sure, this does not solve all of the difficult problems arising out of search and seizure, but it does establish a bench mark from which we can operate with some measure of rationality. Thus, under this principle it would be reasonable to hold that the police may, without obtaining a warrant, search a vehicle if the search is necessary for the safety of the arresting officer, or to avoid the loss of evidence as a result of the mobility of the vehicle, or to prevent the escape of the accused, or for any other reason which outweighs the need for the judicial surveillance over police activity which the search warrant provides.

In the present case there appears to be no reason why the officers could not have obtained a warrant to search defendant's car. I would hold, therefore, that the search was illegal.

HOLMAN, J., dissenting.

The search of the car in question was not such an incident of defendant's arrest as to exempt the police from the requirement that a warrant be first procured. The circumstances of the arrest were not such as to make a search of the automobile necessary or desirable from the standpoint of the arresting officer's safety. There was nothing about the proximity of the automobile to the arrest which made it any more necessary to preserve evidence within it than if it had been parked elsewhere. Neither was any privacy of the defendant in its interior forfeited by him in any way. Therefore, if the search is to be sustained it must be on a basis other than that it was incident to an arrest.

If it is sustained it must be upon the basis that it was reasonable, considering all the circumstances. *Preston v. United States,* 376 US 364, 84 S Ct 881, 11 L ed2d 777 (1964); *Cooper v. California,* 386 US 58, 59-60, 87 S Ct 788, 17 L ed2d 730, reh and modif den 386 US 988, 87 S Ct 1283, 18 L ed2d 243 (1967). There can be no doubt that the police had probable cause to believe the vehicle contained evidence of the crime for which the defendant was arrested. However, it is not my impression that this alone will comply with federal Fourth Amendment requirements. This is what is normally required for the issuance of a warrant. If probable cause is sufficient to merit a search without a warrant, warrants are superfluous in all cases of searches of automobiles. While *Cooper* is ambiguous,

I do not read *Cooper* to intend this. I see nothing other than the officer's probable cause which justifies the application of other than the usual rule that a warrant is required.

In considering whether the requirement of a warrant may be dispensed with, it is proper to balance the need for effective law enforcement against the right of privacy involved. This was the basis for the exception of a search which is incident to an arrest. It may well be that effective law enforcement and the public good will require that this automotive area of privacy be forfeited when the searching officer has probable cause to believe evidence of crime is within the vehicle. Until such time as it more fully appears that this area of privacy must be sacrificed to efficient law enforcement, I view federal constitutional requirements as not permitting a search similar to the one here.

SLOAN, J. joins in this dissent.