Argued November 18, 1969, affirmed March 5, petition
for rehearing denied April 7, 1970. Petition for
review denied by Supreme Court
June 16, 1970

## STATE OF OREGON, *Respondent, v.*
## FRANK MARION KEITH,
### *Appellant.*
465 P2d 724

*John D. Burns,* Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before SCHWAB, Chief Judge, and LANGTRY, FOLEY and BRANCHFIELD, Judges.

SCHWAB, C. J.

The defendant, Frank Keith, appeals from a judgment of conviction upon trial by jury of the crime of assault and robbery being armed with a dangerous weapon. The principal question presented on his appeal deals with the right of the police to search, without first obtaining a warrant, the interior of an automobile which had been seized by the police at the time they arrested the defendant.

Two Portland detectives, Vigna and Frostad, were on patrol on the evening of October 22, 1967. They had a report of an armed robbery of a grocery store on the preceding evening in which the two male robbers got away in a white or pink 1956 or 1957 Oldsmobile, License No. 1P10 – – (the last two digits were unknown). They also knew that the robbers, in the course of the getaway, had shot at a citizen who chased them and who got close enough to them to touch the Oldsmobile as the robbers drove off.

At about 11:45 p.m. on the night in question Detectives Vigna and Frostad saw a 1957 pink Oldsmobile, License No. 1P1056, parked, unoccupied, on downtown Broadway in Portland. Frostad called for information from a nearby telephone while Vigna remained near the vehicle. While Frostad was on the phone the theaters let out and three males and two females entered the vehicle. Frostad learned on the

telephone that the automobile was registered to a George Caldwell and that there was no stolen vehicle report. He also learned, on a separate call after first contacting the people in the car, that the picture of a man named Keith (who later turned out to be the defendant in this case) had been chosen by the victim as a close likeness of one of the robbers and that this man, in the course of the robbery, had referred to his fellow robber as "Irv."

Frostad joined Vigna in approaching the driver, one Golden, and the occupants. They requested Golden's driver's license and asked the other occupants for identification. Keith showed a driver's license bearing his proper name and said that he owned the car and was buying it from the registered owner, George Caldwell, but could produce no bill-of-sale or receipt. One of the other occupants produced identification disclosing that his name was Irving Gaffield. The officers then requested the occupants of the vehicle to come to the police station to clear up the ownership of the automobile and all agreed to do so. As Vigna opened the door for the occupants a sawed-off shotgun was immediately apparent on the floorboards. At that point the five persons were placed under arrest for possession of a sawed-off shotgun. Later, the defendant Keith was booked for armed robbery and for being an ex-convict in possession of a firearm. The officers testified that because of the resistance they met in effectuating the arrest (one of the five ran away), because a crowd was gathering, because it was a rainy night, and because they hoped to dust the trunk of the automobile for the fingerprints of the witness who had touched the trunk while chasing the automobile after the robbery of the

previous night, they seized the car and had it towed to the police station. After it was at the police station, and without first obtaining a search warrant, the police searched the vehicle and found two loaded revolvers under the front seat. This search took place about 45 minutes after the arrest. One of these revolvers was described during the course of trial as being similar to the one used in the robbery and was introduced into evidence after the defendant's timely motion to suppress it as the product of an illegal search and seizure was denied.

■ Defendant argues that the search which produced the revolver was improper because the search was not for evidence of the crime for which the defendant was arrested, viz., possession of a sawed-off shotgun. There is no merit to this argument. .

*State v. Cloman*, 254 Or 1, 456 P2d 67 (1969), involved a situation in which the police announced to the defendant that they were arresting him on an "after hours" charge when, in fact, they had probable cause to, and did, arrest him for possessing stolen wire. In that case the Supreme Court said:

> "* * * The officers' expressed cause for arresting the defendant was a violation of an 'after hours' city ordinance. We believe it reasonable to conclude that the officers gave this cause for arrest because of their uncertainty of the law of probable cause for arrest. We also believe it reasonable to conclude that the actual cause for which the officers arrested Cloman was some charge concerning the stolen wire. Under these circumstances, we find nothing to be served by holding the arrest invalid because the officers were uncertain about a problem which puzzles the courts. We hold that if the officers had probable cause to arrest, the arrest made is not rendered illegal because the of-

ficers expressed another and improper cause for arrest." 254 Or at 12

Here, Officers Vigna and Frostad. had overwhelming cause to arrest the defendant Keith. and his partner Gaffield for the previous night's robbery and to seize the 1957 pink Oldsmobile, an instrumentality of the crime, as evidence. The fact that they were, in fact, arresting them for this robbery as well as for possession of the sawed-off shotgun is demonstrated by their desire to check the trunk lid of the vehicle for fingerprints.

A more difficult problem is: Can the police search, without first obtaining a warrant, the interior of an automobile which is the instrumentality of a crime if prior to making the search the occupants have been removed and the automobile taken to a place where it is securely in the unchallenged dominion of the police before the search is made?

Art I, § 9, Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The amplification and the application of these constitutional provisions have consumed thousands of pages of appellate court opinions.

Professor LaFave in his article *Search and Seizure: "The Course of True Law * * * Has Not * * * Run Smooth,"* points out:

"No area of the law has more bedeviled the judiciary, from the Justices of the Supreme Court down to the magistrate; 'reasonable men simply cannot agree on what is a reasonable search.' Appellate courts have been hampered by a lack of sufficient information on current law enforcement problems and practices from which realistic and effective rules of police conduct might be fashioned. Perhaps because of such limitations, the courts often have utilized doctrines of tort, property, and agency which are of questionable relevance in defining these rules. And constantly lurking in the background is the fact that when a search is found to be 'unreasonable' the consequence is suppression of probative evidence and, in many cases, acquittal or dismissal of a guilty defendant. 'Of all the two-faced problems in the law,' says Justice Traynor, 'there is none more tormenting' than this." 255 Ill L Forum (1966).

Much of the difficulty has developed from attempts by appellate courts to enunciate rules which would enable them to "pigeonhole" searches as reasonable or unreasonable and thus to avoid accepting the reality that the question of what is or is not reasonable, i.e., what constitutes "probable cause," "almost has to be decided on an ad hoc basis because of the tremendous number of fact combinations possible." *State v. Cloman*, 254 Or at 10.①

---

① The court in *Cloman* was talking about "probable cause" to arrest. However, the language is equally pertinent to the issues

The confused reasoning in many of the opinions prior to *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969), is discussed in the dissenting opinions of Justices O'CONNELL and HOLMAN in *State v. McCoy,* 249 Or 160, 437 P2d 734 (1968). Mr. Justice O'CONNELL's dissent at 180-81 accurately prophesied what the Supreme Court of the United States held a year later in *Chimel v. California,* supra:

"*  *  * In some opinions the court sees the search warrant as a *sine qua non* of a legal search unless there are circumstances which justify a search without it. In other opinions the court tests the validity of a search solely upon the basis of its 'reasonableness,' a test which is not related to the search warrant requirement and apparently to be applied as if the search warrant requirement did not exist.

"This inconsistency was spawned by *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L ed 653 (1950), where the court held that a search could be reasonable even though it was practicable for the police to obtain a warrant. This left the test for the legality of searches and seizures at large without any standard for determining what was reasonable and wholly without regard to the need for the judicial scrutiny provided by a search warrant. Although the test for reasonableness of a search was thus separated from the warrant requirement, the court on occasion continues to use language suggesting that a search warrant is necessary unless there is some compelling necessity for dispensing with it.

"To avoid this kind of confusion, I would suggest that this court adopt the principle that a warrantless search is unreasonable unless it is imprac-

of "probable cause" to search without a warrant. See also LaFave, *Search and Seizure: "The Course of True Law  *  *  *  Has Not  *  *  * Run Smooth,"* 255 Ill L Forum, 1966.

ticable for the police officer to obtain a search warrant. To be sure, this does not solve all of the difficult problems arising out of search and seizure, but it does establish a bench mark from which we can operate with some measure of rationality. Thus, under this principle it would be reasonable to hold that the police may, without obtaining a warrant, search a vehicle if the search is necessary for the safety of the arresting officer, or to avoid the loss of evidence as a result of the mobility of the vehicle, or to prevent the escape of the accused, or for any other reason which outweighs the need for the judicial surveillance over police activity which the search warrant provides."

■ Although Mr. Justice White joined by Mr. Justice Black, dissented in *Chimel*, a reading of the majority and minority opinions indicates agreement on the principles enunciated and disagreement only as to their application to the facts of that case.[2] *Chimel* specifically overrules *United States v. Rabinowitz*, 339 US 56, 70 S Ct 430, 94 L Ed 653 (1950), and tells us: (1) the police may not search without probable cause; (2) the existence of probable cause is to be subjected to judicial scrutiny prior to the search by the requirement that the police obtain a search warrant; and (3) the police may search without obtaining a warrant if there is probable cause to search and if, under the attendant circumstances of the particular situation, the police have probable cause to believe that immediate search without a warrant is necessary: (a) to

---

[2] In *Chimel*, the police, armed with an arrest warrant, went to the home of the defendant and arrested him for burglary at a time when his wife was present. They had no search warrant, but immediately after making the arrest, searched the entire three-bedroom house and found stolen property. The majority held that the search went too far; the minority felt that the risk of loss of evidence justified the scope of the warrantless search.

protect the safety of an arresting officer or bystander, or (b) to avoid the loss of evidence.[9]

Law enforcement officials and trial courts .(with some justification) have been confused by the welter of inconsistent holdings and rules and exceptions to rules in the field of warrantless search incident to arrest and otherwise. Law enforcement will not be unduly hampered and legitimate rights to privacy will be properly considered if a policeman, prior to deciding if he should make a warrantless search, will simply ask himself two questions:

> (1) Do I have *probable cause* to believe that a search of the person or place in question will result in the finding of evidence of crime?
>
> "The requirement of probable cause does not mean that there must be 'a showing of guilt beyond a reasonable doubt'; what is needed is 'reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief.' In terms of the quantum of evidence required, this is substantially the equivalent of the probable cause needed for an arrest warrant and of the reasonable grounds needed for arrest without warrant * * *." LaFave, *Search and Seizure* * * *, supra, at 259-60.

and

> (2) Do I have *probable cause* to believe that I must immediately search without taking the time to seek and obtain a warrant: (a) in order to protect myself (or others in the immediate vicinity), or (b) in order to avoid the loss of

---

[9] If the police determine that a warrantless search is necessary, and proceed to make one, judicial scrutiny is not thereby circumvented. In such an instance, if incriminating evidence is seized, by appropriate motion, a defendant can obtain a judicial determination as to whether there was (a) probable cause to search and (b) probable cause to search without a warrant.

evidence, or (c) in order to prevent the escape of the accused, or (d) for any other reason which outweighs the need for the judicial surveillance over police activity which the search warrant provides?

*State v. McCoy,* supra, dissenting opinion of Mr. Justice O'CONNELL.

Trial judges will not always agree with the answers of the police to these questions, nor will appellate courts and trial courts always agree. Nevertheless, the application of the principles inherent in these questions will go far toward minimizing the differences born of the confusion that has existed in the field of Fourth Amendment rights.

6. For reasons discussed below, we do not believe *Chimel* requires that we hold improper the warrantless search of the automobile in question after it had been removed to the police station. However, we might well have done so on our own determination of proper constitutional doctrine if it were not for the opinion of the Oregon Supreme Court in *State v. McCoy,* supra. A brief recital of the history of warrantless searches of automobiles may aid in understanding our interpretation of *State v. McCoy,* supra.

The automobile, because of its high mobility, has been the subject of several exceptions to the general rules regarding the procurement of search warrants. In 1924, *Carroll v. United States,* 267 US 132, 153, 156, 45 S Ct 280, 69 L Ed 543, 39 ALR 790, stated a basic principle pertaining to the stopping and searching of vehicles transporting contraband. There the court said:

"* * * [t]he guaranty of freedom from unreasonable searches and seizures by the Fourth

Amendment has been construed * * * as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

"* * * * *.

"* * * In cases where the securing of a warrant is reasonably practicable, it must be used * * *. In cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause * * *."

The court later reiterated the emergency rule in *Carroll* in *Brinegar v. United States,* 338 US 160, 69 S Ct 1302, 93 L Ed 1879 (1949), and the *Chimel* court approved the *Carroll-Brinegar* doctrine when it cited both cases stating that:

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' [Citing cases]." *Chimel v. California,* supra, 395 US at 764, n 9.

The difficult questions arise when a valid arrest of an occupant of a motor vehicle is made but the search of the vehicle is not contemporaneous with the arrest and is made without a search warrant after it is in police custody. Major federal cases in this area are *Cooper v. California,* 386 US 58, 87 S Ct 788,

17 L Ed 2d 730, reh and modif den 386 US 988, 87 S Ct 1283, 18 L Ed 2d 243 (1967), and *Preston v. United States,* 376 US 364, 84 S Ct 881, 11 L Ed 2d 777 (1964). In *Preston* the defendants were sitting in a parked car. They were arrested for vagrancy and removed to police headquarters. The car, which had not been searched at the time of the arrest, was driven by an officer to the police station where it was searched. Evidence found in the glove compartment and trunk was used to convict the defendants of conspiring to rob a bank. The court, speaking through Mr. Justice Black, struck down the warrantless search on the grounds that once the defendants were removed from the car and the car secured there was no danger that the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime. Three years later the court, in *Cooper v. California,* supra, again speaking through Mr. Justice Black, created an exception to the *Preston* rule. In that case the police arrested the defendant on a narcotics charge and seized the car pursuant to a California law that provided that any officer making a narcotics arrest should seize any vehicle used to transport or otherwise facilitate the possession of narcotics and hold the vehicle as evidence. A week after the arrest the police, without a warrant, searched the car which was being held in the police garage. The defendant's conviction rested on evidence found in the glove compartment of the car. Distinguishing the situation from that in *Preston,* not only by an application of the *Rabinowitz* rule, but apparently on the ground that in *Cooper* the police had seized the vehicle as evidence, the court said:

"* * * But the police arrested Preston for vagrancy, not theft, and no claim was made that

the police had authority to hold his car on that charge. The search was therefore to be treated as though his car was in his own or his agent's possession, safe from intrusions by the police or anyone else. The situation involving petitioner's car is quite different.

"Here, California's Attorney General concedes that the search was not incident to an arrest. It is argued, however, that the search was reasonable on other grounds. Section 11611 of the California Health & Safety Code provides that any officer making an arrest for a narcotics violation shall seize and deliver to the State Division of Narcotic Enforcement any vehicle used to store, conceal, transport, sell or facilitate the possession of narcotics, such vehicle 'to be *held as evidence* until a forfeiture has been declared or a release ordered * * *.' " *Cooper v. California,* supra, 386 US at 60.

An automobile, by its very nature, may often be, as it was in the case at hand, the instrumentality of a crime. It is also customarily used as a place of privacy. Personal papers and personal property are frequently kept in glove compartments, trunks, and under seats.

*Cooper* has been construed by the Oregon Supreme Court in *McCoy* as holding that when a vehicle has been seized as the instrumentality of a crime it may thereafter be lawfully examined (searched) for further evidence of that crime without the necessity of obtaining a search warrant. In *McCoy* the defendant was arrested for raping a woman in his automobile. His car was seized and later searched, without benefit of a warrant, for evidence of the rape. Incriminating evidence was found and introduced at trial. The Oregon Supreme Court, following *Cooper,* held that the search was proper both under the doctrine of *Rabino-*

*witz* and under the theory that the search was an examination of a lawfully-seized instrumentality of the crime.

The United States Supreme Court in *Chimel* does not make clear its attitude toward *Cooper*. It does not mention it in the text of the opinion. Footnote 15 groups many of its decisions which relied on *Rabinowitz* and many which did not. It lists *Cooper* as relying upon *Rabinowitz*, but it also lists *Katz v. United States*, 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), as not relying upon *Rabinowitz*. Yet in the body of its opinion the court states that there are "well recognized exceptions" to the requirement that searches be made only under the authority of the search warrant. *Katz v. United States*, supra, is cited as authority for this comment—footnote 8. *Katz*, in turn, cites *Cooper v. California*, supra, as an example of instances when warrantless searches were allowable. As we have stated above, regardless of the requirements of *Chimel*, in the absence of *McCoy*, we might well have held in this case that sound constitutional doctrine says that when an automobile is lawfully seized as an instrumentality of a crime it, nevertheless, remains a container of private places—that once it has been adequately secured there is no reason for not obtaining a search warrant before searching the normal places of privacy such as the glove compartment, trunk, etc. However, *Chimel* does not clearly overrule *Cooper* and therefore it does not clearly overrule the recent pronouncement of our Supreme Court in *McCoy*. *McCoy* justifies the warrantless search that took place in the case at hand. In view of this holding we need not now consider whether *Chimel* is to be retroactively applied.

■ The defendant moved to strike his in-court identi-

fication by a witness who had viewed a police lineup in which the defendant was exhibited on the basis that counsel was not present at the lineup. He relies upon *United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967), as authority for his motion. The motion to strike was properly denied because it was not preceded by timely objection. Further, the court properly found that in-court identification was made independently of the lineup procedure.

■ At the time the defendant was arrested and searched a straight-edged razor was found on his person. At trial, on cross-examination, defendant's counsel asked Officer Vigna whether defendant had a gun or bullets on his person when he was arrested. Vigna responded in the negative. On redirect, Vigna testified concerning the straight-edged razor; thereupon, defendant moved for a mistrial. The defendant opened the door and the state stepped in. The motion for mistrial was properly denied. *State v. Storms,* 244 Or 357, 418 P2d 261 (1966).

Affirmed.