# STATE OF OREGON, *Appellant,*
## *v.*
# BRUCE NEIL CLEVENGER, *Respondent.*
## (No. 10129, CA 10531)
### 585 P2d 718

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

The state appeals from a pre-trial order granting defendant's motion to suppress a pair of shoes seized in the defendant's home and statements subsequently made by the defendant. We hold that the shoes were lawfully seized and the statements not tainted thereby.

In the investigation of a burglary of a store in the city of Eastside, police observed tracks of ripple-soled athletic shoes in the mud leading to the point of the burglar's entry. The police knew the defendant had been in the store late the evening before. They asked the defendant where he had been that night. The defendant replied tha he had been at Point Blanco. When informed that the store owner had seen him in the store at 10 p.m., he acknowledged that he had been there. The police then asked the defendant if he had any other shoes and the defendant replied that he had a pair of boots at home. The police asked if they could see them and the defendant agreed.

When the police and the defendant arrived at the defendant's home, the police asked the defendant if they could enter the house and, upon defendant's affirmative answer, did so. The entryway to the defendant's house opened to a stairway ahead, a living room to the right and a kitchen/dining room to the left. Halfway up the stairs was a doorway. A pair of shoes were in plain view on the stairs. The defendant suddenly ran up the stairway, picked up the shoes and ran through the doorway at the landing, the spring door slamming behind. One of the officers pursued the defendant through an upstairs room and another doorway and into the defendant's bedroom where, as the officer entered, the defendant was pulling covers over his bed. When asked to explain his behavior, the defendant claimed not to know anything about any pair of shoes. The officer soon found the shoes under the covers.

The trial court suppressed the shoes and all subsequent statements in the case for the reasons that the police had exceeded the scope of plaintiff's consent in entering the house as deeply as the stairway and that the shoes were not "obvious evidence" of a crime.

The court found that defendant had given valid permission to enter, but no consent to search. The court inferred that the consent was to enter the living room, not the staircase and bedroom. Whether that inference is supported by the evidence or not, the critical observation was made from the entryway and consent to enter, by its very essence, included consent to be in the entryway. Thus, defendant led the officers to the vantage point from which they saw him grab the shoes.

Evidence of crime observed in plain view from a lawful vantage point may be seized. *State v. Robbins,* 3 Or App 472, 474 P2d 772 (1970). Probability, not certainty, that the property constitutes such evidence, is the standard. *State v. Keith,* 2 Or App 133, 465 P2d 724 *rev den* (1970). Here, defendant lied about an alibi and, knowing the police sought his shoes for examination, attempted to run away with and conceal them. That constitutes probable cause to believe the shoes to be evidence of crime and exigent circumstances justifying the officer's having gone beyond the zone of consent to effect the seizure. *State v. Hunt,* 15 Or App 76, 80, 514 P2d 1363 (1973) *rev den* (1974).

Reversed and remanded.