Argued January 20, affirmed February 11, petition for rehearing
denied March 9, petition for review denied April 13, 1971

STATE OF OREGON, *Respondent, v.*
HAROLD MARK HUDDLESTON, *Appellant.*

480 P2d 454

*Howard R. Lonergan,* Portland, argued the cause and filed the brief for appellant.

*James M. Brown,* Deputy District Attorney, Corvallis, argued the cause for respondent. With him on the brief were Frank D. Knight, District Attorney, and Henry R. Dickerson, Jr., Deputy District Attorney, Corvallis.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

The question presented in this appeal is the lawfulness of actions of a police officer in stopping a pickup truck driven by the defendant, and subsequently seizing certain evidence observed therein. Defendant was thereafter tried and convicted on charges of burglary in a dwelling and concealing stolen property.

Prior to trial defendant moved to suppress the evidence claiming violation of defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Following an evidentiary hearing the circuit judge, in a memorandum opinion, concluded that the stopping of the vehicle was lawful, that the evidence had not been discovered by means of an illegal search, and that the motion to suppress should be denied.

Defendant's sole assignment of error is the denial of his motion to suppress.

The salient facts are as follows:

For some time prior to defendant's arrest, residences in the northwest section of Corvallis had suffered a series of similar burglaries.

On the night of Monday, January 6, 1969, Officer Ronald Fowler of the city police department attended a briefing at police headquarters during which officers going on night patrol were briefed concerning burglaries that had been reported in the northside area during the previous weekend. Included in that briefing was the information that the stolen items included a color television set, furniture, foodstuffs, a Toro lawn mower and power tools. Due to the size of the items which had been taken, the police concluded that the burglars probably were using a panel truck or a pickup with some type of cover. Officer Fowler then commenced his nightly motor patrol.

At approximately 5:30 the next morning (January 7), while driving his patrol car and listening in on the police radio, Officer Fowler heard the radio dispatcher order a fellow officer to the scene of a new burglary in the northwest area at the home of William D. Brown. According to the dispatch the items stolen included some $300 worth of groceries. He immediately headed toward the scene of the latest burglary. As he was driving west on Harrison Street he saw a canopy-type pickup truck with two men in it approaching from the opposite direction. The two vehicles met at a stop-street intersection. As the pickup stopped, then turned left (north) in front of the patrol car, he noted that there were several large glass windows in the sides and rear of the canopy. Officer Fowler decided to follow the pickup. As he did so he observed through the rear window of the pickup what appeared to be

the handle of a power lawn mower and several other items. He continued to follow the truck for a few blocks to the next stop street. The truck then turned right (east) and started to head away from the area, whereupon he signaled the driver to halt. As he walked up to the front of the pickup on the driver's side, he shined his flashlight through the side windows into the interior and saw two lawn mowers, numerous cans of soup, clam chowder and several large bags of dry dog food in plain view inside. He next checked the occupants of the vehicle and found its driver to be the defendant and the passenger a man named Snyder.

Fowler immediately radioed police headquarters, asking for a description of the food items taken from the Brown home. He then returned to the pickup and asked defendant's permission to look in the back. Defendant replied, "Yeah, I guess * * *." Fowler then opened the tailgate and canopy door in the presence of defendant and observed the items already referred to plus a plastic garbage can with a frozen turkey inside.

Following this they returned to the front of the pickup where the officer questioned defendant as to where he had obtained the food items.

At this point another city police officer, Officer Peters, arrived on the scene. Fowler requested him to go to the Brown home to obtain positive identification of the food items. Fowler then quickly checked the inside of the pickup's cab for possible weapons, found none, and allowed the two suspects to get back into their vehicle pending further checks.

Shortly thereafter Officer Peters returned and advised Fowler that the grocery items Fowler had described over the radio were the same as those taken from the Brown home.

On being so advised he placed defendant and his companion under arrest for receiving and concealing stolen property. With defendant's permission the pickup was then driven to the police station and the items were seized and inventoried.

Defendant asserts that a law enforcement officer may not stop a moving automobile without a warrant, or probable cause to arrest, where he has only a "mere suspicion" that the vehicle or its occupants may be involved in criminal activity.

The applicable rule was clearly and concisely set out in *State v. Cloman*, 254 Or 1, 6, 456 P2d 67 (1969), where our Supreme Court stated:

> "* * * [T]he police can stop a car to determine the identity of the vehicle and its occupants if they have a reasonable suspicion that the car or its occupants have a connection with criminal activity * * *."

See also, *State v. Miller*, 2 Or App 87, 91-92, 465 P2d 894, Sup Ct *review denied* (1970).

The issue then is this: Did Officer Fowler have "a reasonable suspicion" that the pickup and its occupants had a connection with criminal activity?

In the context of the facts we have already recited in some detail we are satisfied that Officer Fowler acted under "a reasonable suspicion" when he stopped defendant's pickup. The "reasonable suspicion" needed to justify stopping a vehicle may be of a quality and quantity which would not meet the requirements necessary to establish probable cause to arrest. *State v. Cloman*, supra. Conclusions reached in *Cloman* and *Miller* are not inconsistent with the constitutional principles enunciated in the cases cited by defendant.

As we stated in *State v. Robbins,* 3 Or App 472, 474, 474 P2d 772 (1970):

> "* * * Evidence of a crime in plain view from a place where an officer is entitled to be is subject to seizure. *State v. Brown,* 89 Adv Sh 741, — Or App —, 461 P2d 836 (1969); *State v. Johnson,* 232 Or 118, 374 P2d 481 (1962). * * *"

Having determined that Officer Fowler had reasonable grounds to stop the defendant's vehicle, we hold further that the temporary detaining of the defendant and his companion until the officer could obtain an identification of the grocery items taken from the Brown residence was not unreasonable under all the circumstances.

Affirmed.