Argued July 21, affirmed October 4, petition for rehearing denied November 3, petition for review denied December 14, 1971,

STATE OF OREGON, *Respondent, v.*
CHARLES TEMPLE, *Appellant.*

488 P2d 1380

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*W. Michael Gillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

Defendant was convicted of possession of stolen property (copper wire) and appeals, assigning as errors the trial court's failure to suppress certain evidence, and his conviction by less than an unanimous verdict.

Defendant was arrested for three traffic violations on February 23, 1970, while driving a panel truck. The truck was impounded at that time. Subse-

quently, on March 6, 1970, the police, armed with a search warrant, entered the truck which was still impounded, and seized numerous coils of copper wire, some of which were introduced in evidence at defendant's trial.

Defendant characterizes the events of February 23 as a "pretext arrest," contending that there was no probable cause to arrest him for a felony on that date. He also complains of events that transpired between that date and the execution of the search warrant on March 6. We first discuss the events of February 23, and then deal briefly with the subsequent events.

The chronology on February 23 was as follows: At about 3 p.m., while investigating an unrelated matter, Detective Wolever of the Washington County Sheriff's Department observed the defendant drive by in a battered 1948 Ford panel truck. Detective Wolever knew the defendant by sight, having previously arrested him on various felony charges. The detective had also previously investigated defendant's possible connections with thefts of large amounts of copper wire. The detective observed that the panel truck was very heavily loaded, with the rear of the truck riding down on the rear axle. His suspicions aroused, Detective Wolever followed defendant's truck until defendant parked and went into a tavern. After also parking, the detective approached the truck and looked in through the back and side windows. He observed in plain view numerous coils of heavy copper wire that he estimated to total about 1,000 to 1,500 pounds. Detective Wolever, who had considerable prior experience with investigating copper wire thefts, believed the type and amount of wire he observed to be

not readily available to an ordinary citizen; nor would such a citizen ever have use for those types and amounts.

Detective Wolever returned to his police car and radioed the essence of his observations to other cars in the area. He requested that defendant's truck be kept under surveillance and stopped if possible.

Officer Shook received this radio message and began following defendant's truck after defendant left the tavern. At about 4 p.m., the officer observed that the brake lights on defendant's truck did not work. He stopped the truck, and, after further investigation, issued traffic citations for no brake lights, no horn, and a defective secondary braking system. Since defendant was not a resident of Washington County, he was taken into custody to post bond on the traffic offenses and his truck was impounded.

At the time of this arrest, Officer Shook also observed the coils of copper wire in plain sight in the back of defendant's truck; it appeared to him to be the kind only available to utility companies. In addition, Officer Shook testified at the suppression hearing that he knew defendant's reputation to be, 'if you will pardon the expression, a thief of copper wire."

At the time of these events, both Detective Wolever and Officer Shook were cognizant of the fact that numerous copper wire thefts had recently been reported in surrounding areas.

As we view these facts, the question presented is whether there was probable cause to *seize* the copper wire in defendant's truck as evidence of a crime and the truck itself as an instrumentality of a crime on February 23. See, *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966); *State v. Keith*, 2 Or App 133, 465 P2d 724,

Sup Ct *review denied* (1970). We note in passing that there never was a *search* of the truck on February 23, because the copper wire was at all times in plain view.

■ We have previously held that the quantum of evidence required to constitute probable cause to arrest or probable cause to search is substantially the same. *State v. Murphy*, 2 Or App 251, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944, 91 S Ct 246, 27 L Ed 2d 248 (1970). We see no reason why the same should not be true of probable cause to seize evidence in plain view. Therefore, the same factors usually create sufficient probable cause to justify an arrest, a search, a seizure, or any combination thereof. See, *State v. Elk*, 249 Or 614, 439 P2d 1011 (1968).

■ Whether there was sufficient probable cause to seize the wire and truck in this case is a close question. However, under the authority of *State v. Cloman*, 254 Or 1, 456 P2d 67 (1969), we conclude that there was. In *Cloman*, the police discovered large quantities of copper wire which appeared to be stolen and knew that a certain type of car had recently been near the scene of this discovery. The *Cloman* court first held that such information provided the police with sufficient justification to stop a similar car about an hour later and about a mile from the scene of the discovered wire. The *Cloman* court went on to hold that when, upon stopping the car, the police identified the occupant as a known copper wire thief, they had probable cause to make an arrest and a search incident thereto.

Although the *Cloman* holding was based on sufficient probable cause to arrest, which supported the search incident thereto, we conclude that the same elements constituting probable cause to arrest in *Cloman* constituted probable cause to seize in the in-

stant case. Specifically, they are: (1) an observation of goods that reasonably appear to be stolen; and (2) in the possession of a person whom the police reasonably believe to have previously engaged in criminal activity connected with similar goods. These are circumstances sufficiently strong to warrant a cautious man in the belief that a crime has been or is being committed. See, *State v. Keith,* supra, at 142.

■ *Cloman* explicitly cautions that knowledge of a person's prior criminal activity can never, standing alone, furnish probable cause. Otherwise, "anyone with a previous criminal record could be arrested at will." *Beck v. Ohio,* 379 US 89, 85 S Ct 223, 13 L Ed 2d 142 (1964), quoted in *Cloman,* 254 Or at 11. Also, at least by implication, *Cloman* cautions that the police must have a reasonable foundation for their belief that certain goods are stolen. We are satisfied that the large amount and unusual nature of the copper wire observed in the back of defendant's battered panel truck provided such reasonable foundation. In certain instances, possession of goods, while not justifying an immediate search, can create sufficient suspicion to justify further investigation. Such was the situation that justified stopping a vehicle for investigation in *State v. Huddleston,* 5 Or App 9, 480 P2d 454, Sup Ct *review denied* (1971). But here Detective Wolever had more than a mere suspicion when he observed copper wire in defendant's truck in amounts and types that his police experience indicated a citizen could not readily acquire and would not have any use for.

As we noted above, the factors constituting probable cause will usually justify an arrest, a search, a seizure, or a combination thereof. It follows that on February 23 the police were justified in arresting

defendant for the felony of possession of stolen goods, and justified in seizing the wire and truck. This being the case, it is immaterial to the disposition of the issue at bar that the police articulated a different, or even improper reason for the arrest and seizure of the truck. *State v. Cloman,* supra; *State v. Murphy,* supra.

■ What we have said disposes of the controlling issue at bar. However, defendant also complains of subsequent events that occurred between his arrest on February 23 and execution of the search warrant on March 6, 1970. Briefly summarized, they were: When taken to the Washington County jail on February 23 for the three traffic offenses described above, defendant tendered the normal bail of $30, only to be told that the bail had been raised to $150. (Apparently the raising of the bail was accomplished by way of a phone conversation between Officer Shook, the arresting officer, and a magistrate.) The defendant then contacted a bondsman who made the necessary arrangements for defendant's release by 5 p.m. on February 23; yet, with no apparent justification, defendant was held at the jail until after 8 p.m. on that date. Upon being released, defendant inquired as to the whereabouts of his truck, and received a variety of unresponsive answers. Over the next many days, defendant pursued with various Washington County police officials the question of when his truck would be returned, but was never even told where it was located. Finally, through his own devices, defendant learned the truck was at the Washington County impound lot, and went there to get his truck, only to be told that the truck would not be released without the permission of the Washington County sheriff's office, the very people who had evaded his questions as to the location of the truck for more than a week. As far

as the instant record discloses, defendant has never regained possession of his truck.

The state's brief candidly concedes that these activities of the police after defendant's arrest "seem at the least foolish and at the worst outrageous." We agree. However, since we have concluded that there was probable cause on February 23 to seize the copper wire and defendant's truck, and arrest the defendant, such events do not change the result here. *State v. Cloman,* supra. What other redress, if any, is available to the defendant, we need not consider here.

■ Defendant also assigns as error his conviction by a 10-2 vote of the jury. This assignment is without merit. *State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

Affirmed.