Argued June 21, affirmed July 27, petition for rehearing denied
August 23, petition for review denied November 8, 1972

STATE OF OREGON, *Respondent, v.*
FREDERICK LEWIS, *aka* JAMAL DAVIS
(No. C-71-07-2176 Cr.), *Appellant.*

499 P2d 836

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Burgess, Special Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Defendant was indicted for armed robbery and convicted of an included crime, larceny. He appeals contending that (1) his motion to suppress evidence should have been allowed, and (2) a jury instruction denied him the benefit of the presumption of innocence.

Defendant and a Miss Erickson had visited an Ontario, Oregon hospital for medical aid and then suddenly left. Hospital authorities notified police that defendant appeared to have had an overdose of drugs, and should be returned for treatment. City police, and the state police, spotted their vehicle. The city police stopped it, and got defendant to agree to return to the hospital. Miss Erickson drove their vehicle. The city and state police followed. The state police noted that Miss Erickson was driving erratically, and at the hospital, after defendant went inside, questioned her about her driving. She replied that the steering mechanism

was defective. One of the policemen asked her if he could check the steering. She said she did not want to get out, but slid over from under the steering wheel so he could get in. The officer got in and commenced checking the steering when he saw a hunting knife protruding from a small, soft, open leather bag hanging on the hood release lever. He reached for the bag and knife, looked in the open bag and handed them out the open window of the vehicle to the other officer. The bag contained a loaded revolver. The revolver and knife were identified by the victim in the trial of this case and received in evidence as robbery weapons used by defendant. Also received were a suitcase (and identification cards found therein) which were taken from plain view in the vehicle after police learned that defendant was wanted for the robbery and that the suitcase had been taken in it. (A search warrant was obtained for a search for drugs, and drugs were found during the ensuing search. That search presents no issue in this case.)

■ (1). Defendant contends the seizure of the weapons and bag resulted from an illegal search, and that the taking of the suitcase was a result thereof, and therefore all of them should have been suppressed.

The evidence warranted the trial judge on the motion to suppress to believe the police had seen Miss Erickson driving erratically—therefore it was reasonable, indeed it was their duty, to investigate sufficiently to be sure she would not be a danger on the road. As a result, the evidence supports a finding that she invited one of them into the vehicle to check its steering. Once there, he saw the knife in a most unusual and handy carrying case. He already had reason to believe Miss Erickson was under some abnormal in-

fluence; hence, it was not unreasonable to take the knife for his own protection. Once the bag was in his hand the top of it hung open, and he could not help seeing and feeling the revolver.

What the Oregon Supreme Court said in *State v. Riley,* 240 Or 521, 523-25, 402 P2d 741 (1965), is applicable:

"* * * [T]he gun was seen without an intrusion into the car, there was in fact no search * * *.

"* * * There was * * * probable cause to believe that defendant was violating ORS 166.250 making it unlawful without a license to carry concealed within a vehicle a firearm capable of being concealed upon the person * * *.

"* * * * * *

"The seizure being lawful initially, the evidence seized was admissible for the purpose of proving any crime committed by defendant. The officers were justified in seizing the gun upon the further ground that it was reasonably necessary to their safety. * * * There was no indication that defendant was about to make an effort to get the gun. * * * [But] [t]o justify the seizure of a weapon which could be used against the arresting officer *we shall not draw a fine line measuring the possible risk* * * *." (Emphasis supplied.)

No holding of the Oregon or United States Supreme Courts called to our attention has, since 1965, changed the import of this language.

■ (2). The defendant interrupted court proceedings during the trial so that the judge was required to and did have him removed from the courtroom on four occasions. Defendant did not testify, or call any witnesses, but he had the services of capable appointed

counsel. In outbursts before the jury defendant accused several state witnesses of lying and just before closing arguments, with the jury present, he said:

"* * * I'd like to say something to the jury before they start.

"These people are lying about me. Gail Kellermann lied. I have witnesses to prove they lied and they don't try to bring them here. She lied and they know they lied."

The court then again had him removed.

The court expressed fear that defendant, by his own actions, was prejudicing himself in the jury's eyes. Consequently, twice during the trial the judge told the jury the defendant was presumed innocent. Then, in his final instructions, the judge said:

"Now, the law presumes that the defendant is innocent of the crime charged, and indeed, of any lesser included crime, and this presumption follows him until guilt is proved beyond a reasonable doubt.

*"You may believe in general that if a person is charged by the State with committing a crime, he is more likely to be guilty of the charge than any person chosen at random from the street,* but the very meaning of the presumption of innocence is that you so discipline yourselves that as you sit as a juror in this case, you do presume that this defendant is innocent, just as innocent as any person chosen at random from the street.

"Only in this way can you be certain that you give no weight at all to the fact he has been charged with the crime and be equally certain that you require the State to prove [him] guilty beyond a reasonable doubt." (Emphasis supplied.)

Defendant seeks to have us give meaning only to the part emphasized above. This we will not do—when the instruction is read as a whole, it is apparent that

the trial judge was effectively emphasizing the presumption of innocence, not destroying it.

Affirmed.