Argued November 22, reversed and remanded December 23, 1974,
reconsideration denied January 29, petition for review
denied February 19, 1975

STATE OF OREGON, *Appellant, v.* FRANK
LEROY BREWTON (No. 86100), *Respondent.*

529 P2d 967

Appeal from Circuit Court, Clackamas County.

WINSTON L. BRADSHAW, Judge.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John Henry Hingson, III,* Oregon City, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

The sole issue on this appeal is whether the police had the right to seize and use as evidence property which was in plain view in an automobile which was in the possession of the defendant at the time he was arrested on a warrant charging him with burglary.

The material facts are uncontroverted. Sometime between November 9 and November 12, 1973, Detective Harris of the Clackamas County Sheriff's office became aware of a Marion County warrant for the arrest of defendant for first degree burglary. Harris began looking for the defendant in places defendant was known to frequent. He knew the kind of vehicle defendant was driving. Harris met some Multnomah County detectives to exchange information about the defendant. They met at a place where defendant had been seen in the past, and while they were discussing the defendant they saw him drive by in his automobile. They stopped and arrested him. They impounded his automobile and caused its contents to be inventoried and secured before the vehicle was towed away.

While looking into the automobile from a point on the street or curb the police saw in plain view in the interior of the automobile stereo equipment and an ornamental clock. The police described the interior of the vehicle as disorderly and testified that the stereo equipment and the clock "appeared to [have been] lightly thrown into the vehicle." The police suspected that the items in question had been stolen but did not have any stolen property report covering those items. Recognizing that these items were valuable they had them removed from the automobile before the automobile was towed away. These items eventually found their way to the Multnomah County courthouse where they were stored in the police property room.

Some four hours after the defendant was arrested, the police received a stolen property report covering the items in question.

At the suppression hearing the state tried to justify the seizure as a part of an inventory, and safekeeping of valuable property was the reason given by the police for taking the actions they did with regard to the items in question.

The trial court, apparently relying upon *State v. Keller,* 265 Or 622, 510 P2d 568 (1973), held that the property was not properly seized as part of an inventory. The state argues that *Keller* does not prohibit the action taken by the police in the case at bar as to objects in plain view, but only prohibits the opening of closed containers from within an automobile impounded for safekeeping. Specifically, *Keller* involved opening a closed tackle box.

■ Even if we assume for the purposes of argument that *Keller* stands for the proposition that items in plain view in the interior of an automobile which

is impounded cannot as a part of the inventory process be examined for serial numbers or other descriptive markings, such a holding would not be dispositive of this case. As pointed out above, when the police saw this property they did suspect that it was stolen. For the reasons which follow we conclude they had probable cause to believe that it was stolen. This being the situation, the fact that the police enunciated inventory and safekeeping as reasons for the seizure and examination of the property does not require that the evidence be suppressed. If the police had probable cause to seize and examine the property because they believed it was stolen, their actions are not rendered illegal because they enunciated different reasons for doing so. In *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969), the Supreme Court said:

"* * * The officers' expressed cause for arresting the defendant was a violation of an 'after hours' city ordinance. We believe it reasonable to conclude that the officers gave this cause for arrest because of their uncertainty of the law of probable cause for arrest. We also believe it reasonable to conclude that the actual cause for which the officers arrested Cloman was some charge concerning the stolen wire. Under these circumstances, we find nothing to be served by holding the arrest invalid because the officers were uncertain about a problem which puzzles the courts. We hold that if the officers had probable cause to arrest, the arrest made is not rendered illegal because the officers expressed another and improper cause for arrest." 254 Or at 12.

In *State v. Holmes,* 17 Or App 464, 522 P2d 900 (1974), in upholding a search which had been characterized by the police as an "inventory search," we said:

"* * * Defendant is correct in his assertion

that * * * the search cannot be upheld on that theory. * * * However, the permissibility of the intrusion does not depend upon the label placed upon it by police personnel. * * *" 99 Adv Sh at 264-65.

*See also, State v. Temple,* 7 Or App 91, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972).

Under the holding of *State v. Elk,* 249 Or 614, 439 P2d 1011 (1968), probable cause to seize existed in the case at bar. In *Elk* the police had a report that a shotgun had been stolen from a parked truck and that a blue General Motors automobile had been seen near the parked truck just prior to the theft. Later that day an automobile meeting that general description was seen standing unoccupied on a side road in the same county in which the theft had occurred. The trunk lid was partly open and without touching the lid the police officer who saw this automobile ascertained that there was in the trunk a shotgun meeting the general description of the one which had been reported stolen. The officer then raised the lid and saw that the trunk contained 40 six-packs of beer. The beer and the shotgun were removed from the vehicle and taken into custody. At the time of the seizure there was no report of any stolen beer. It was only after the arrest of the defendant for the theft of the shotgun that a report was received indicating that the beer had been stolen. The issue in *Elk* was whether the beer was properly seized and available for use in evidence against the defendant. The Supreme Court held that the police had a right to seize the beer, saying:

"* * * In the instant case the officers had probable cause to believe the car had been involved in a larceny; the fruits of the larceny were positive-

ly identified as such as a result of a lawful search; the fruits of the larceny were commingled with the beer in the trunk of defendant's car; and the beer was of a most unusual quantity (it filled the trunk of the car to within 6 inches of the body line of the trunk). The officers knew the defendant. These facts were sufficient cause upon which to base the officer's belief that the beer was stolen. The requirements of *State v. Elkins* [245 Or 279, 422 P2d 250 (1966)] are met in this case." 249 Or at 624.

■ In the case at bar, unlike in *Elk,* the officers did not have probable cause to believe that defendant's automobile had been involved in a larceny, but they did have probable cause because of the arrest warrant to believe that the defendant had been involved in a burglary. They also knew that, while people who are not criminals have occasions to carry stereo equipment and clocks in their automobiles, such goods are not infrequently taken in burglaries and transported from the scene by vehicle, and that the defendant was wanted as a burglar.

There is no meaningful distinction between the situation here and the situation in *Elk.* In *Elk* the police had probable cause to believe that whoever had been using the car was a thief because of the presence of the stolen gun. They did not know that the beer in the car was stolen; they merely knew with regard to the beer that thieves sometimes steal beer, that stolen beer is not uncommonly transported from the scene of the theft by automobile, and that whoever had been using the automobile in question was probably a thief. If the police in *Elk* had probable cause to seize the beer on the belief that it was stolen, they had probable cause to seize the stereo equipment and clock in the case at bar.

In *State v. Hirsch,* 267 Or 613, 518 P2d 649 (1974), decided by the Supreme Court subsequent to *Keller,* the defendant, while driving a U-Haul truck, was arrested for traffic violations. The truck was observed to be full of furniture, appliances and other household items. The defendant was placed in jail and the truck impounded. The contents of the truck were thereafter inventoried, and ultimately the inventory was matched up with a stolen property report which was received subsequent to the inventory. The opinion indicates that at the time defendant was arrested for the traffic violations the police were suspicious of the defendant because they had information that he had been " 'casing' " residential homes and had stated, " 'the house would be easy to loot.' " The opinion then states, based upon this recital:

> "* * * [B]oth officers had probable cause to believe the defendant with the U-Haul truck was engaged in criminal activity and they had reasonable cause to stop the truck, arrest the defendant, search the van, and inventory its contents without a search warrant * * *." 267 Or at 623.

In essence, therefore, the majority opinion in *Hirsch* says when there is evidence to believe that a person has been contemplating burglary and he is thereafter arrested for traffic offenses, there is probable cause to believe that his vehicle contains evidence of burglary. It would appear that the facts in *Hirsch* were not as strong in supporting a finding of probable cause as those in *Elk* or the case at bar.

Up until this point we have dealt with probable cause to seize. At the hearing on the motion to suppress, the prosecutor stated that the state was not relying on probable cause but rather on the fact that the seizure and inspection of the stereo equipment and

clock were part of a permissible inventory procedure by the police. Even assuming that the state is bound by the position it took at the hearing and that the items in question must be suppressed unless the inventory procedure was proper, the trial court was in error in suppressing. *State v. Keller,* supra, assuming that it is still the law of Oregon in light of *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), clearly did not prohibit the inventorying of objects in plain view in an impounded automobile but prohibited only going beyond that by opening sealed containers found within the automobile. While the logic of the distinction is not obvious, in the course of holding that it was unconstitutional absent probable cause to open a sealed tackle box for the purpose of determining its contents as part of an inventory, the court clearly held that the prohibition did not extend to the inventorying of objects in plain view. It cited with approval *Mozzetti v. Superior Court,* 4 Cal 3d 699, 94 Cal Rptr 412, 484 P2d 84 (1971), and *State v. Gwinn,* 301 A2d 291 (Del Supr 1972). In *Mozzetti* the court said:

> "We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing * * * may be listed in an inventory or other police report. (See *Harris v. United States* (1968) *supra,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069].) What concerns us here is the reasonableness of the search *into* the closed suitcase." (Emphasis theirs.) (Brackets theirs.) 4 Cal 3d at 707.

In *Gwinn* the police arrested the defendant for operating a motor vehicle while under the influence of alcoholic liquor and called a tow truck to impound

the automobile. The arresting officer, without a search warrant, inventoried the vehicle's contents preliminary to impounding the vehicle in order to protect the owner, the tow company and the police. The officer saw a closed satchel, opened it and found marihuana. The court suppressed the marihuana because it was discovered by opening a closed container. It held, however, that the search was reasonable as to items "in plain view" of the inspecting officer in the course of inventorying, and that these fruits of the search were admissible as evidence of crime whether or not related to the offenses for which the arrest was made. Here the stereo equipment and clock were in plain view.

Reversed and remanded.

LANGTRY, J., dissenting.

The majority has stated the facts favorable to the state's case, but has ignored others that are unfavorable.

The record shows that when the defendant was stopped he was handcuffed and placed in a police car. He refused to talk, remaining mute. The police immediately called for a van which was equipped for crime investigation. The keys to defendant's car were taken from the front seat area and were used to open the car trunk. The police thoroughly searched that area, opened a closed satchel and took jewelry from it but left it and clothing it contained there. They took some items and left others throughout the vehicle. The only things they took were suspicious items which could probably be used as evidence. Their "inventory," as the trial judge discerned, was a full-scale search of the vehicle for seizure of evidence of crime without the benefit of a search warrant. Once they had dusted

the interior of the automobile and its contents for fingerprints, after the van arrived, and had taken all of the evidence they could find, they lost interest in the car and numerous articles in it that they did not want, and had it towed away.

There is no evidence that the defendant's vehicle was an instrumentality of any crime.

Later the stereo, speakers and the clock, which were in plain view and which were seized, were reported stolen in a burglary the same day as defendant's arrest, resulting in the charge in this case. At the time of defendant's arrest, the officers had no knowledge about the circumstances of the burglary for which defendant was wanted on the arrest warrant, and they, of course, had no knowledge of the instant burglary.

The prosecutor stated that the only ground upon which the state was contending the seizure was valid was that of inventory, and conceded all items taken from the trunk and the satchel were illegally seized under the inventory theory. *See State v. Keller,* 265 Or 622, 510 P2d 568 (1973). The close question in this case is whether the stereo, speakers and clock which were in plain view were validly taken in an inventory and then were inadvertently discovered to be stolen property at a later time.

The circuit court found that the officers did not have probable cause or reasonable suspicion to believe the automobile contained evidence of a crime, and that the seizure of the property "cannot be an inventory search. The entire circumstances indicate an actual search and seizure." It found the officers had the right and opportunity to impound the car and upon learning of the more recent burglary or details of the

state police charge would have had probable cause to obtain a search warrant.

We should be reviewing this case to determine whether the circuit court erred. When the prosecutor argued the case to the circuit court he said:

"* * * [T]hey had a suspicion that the property in the vehicle was in fact the subject of theft or burglary.

"We do not contend that they had probable cause at that point to believe that the property was stolen. The State contends that what we have here is a valid inventory search. ·

"Subsequently, after inventorying and taking this property into their custody for safe-keeping, it was in fact determined that most of the property in the vehicle was the subject of a burglary.

"The State's grounds for appeal are two. The first ground is that given the transcript of the proceedings at District Court, it was in fact a valid inventory search. Our second ground is that the motion to suppress which was filed in this case and which appears in the court's record was insufficient * * * *."

The second ground thus partially stated was later abandoned. Therefore, the only question presented to the circuit court was whether this was a valid inventory search.

From the facts recited it is obvious that the finding of the circuit court is based on substantial evidence. The state contends that nevertheless the officers had the right to inventory the relatively valuable items which were in plain view and that their taking was thus valid, although seizing the other items was not.

The purpose of the evidence exclusionary rule

is to prevent unconstitutionally unreasonable searches and seizures, and to enforce procurement of constitutionally required search warrants. The premise from which reasoning usually proceeds in determining close cases like this is that a warrantless search is prima facie illegal. *State v. Elkins,* 245 Or 279, 292-94, 422 P2d 250 (1966). It is the ignoring of this premise by police officers which most often causes the difficulty.

In *State v. Keller,* supra, and in *Mozzetti v. Superior Court,* 4 Cal 3d 699, 94 Cal Rptr 412, 484 P2d 84 (1971), relied upon in *Keller,* contraband① held as a result of inventories of automobiles has been said not to be subject to suppression if it is in plain view of police officers who are lawfully in positions to see it. *See also State v. Childers,* 18 Or App 564, 526 P2d 446, Sup Ct *review denied* (1974). In *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), as was noted in *State v. Keller,* supra, it is said that items thus seized may be used as evidence in a criminal prosecution in certain circumstances. One of those circumstances is where the item is uncovered during a search incident to an arrest and where "a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object * * *." 403 US at 466. It is obvious that at bar the police officers were searching for evidence against the accused, though in their testimony they occasionally sought to screen that fact by saying they "inventoried" suspi-

---

① In State v. Keller, 265 Or 622, 510 P2d 568 (1973), and in Mozzetti v. Superior Court, 4 Cal 3d 699, 94 Cal Rptr 412, 484 P2d 84 (1971), the "contraband" the courts were talking about was inherently illegal drugs. Here, the "contraband" was not contraband at all. Webster's New Twentieth Century Dictionary 396 (unabridged 2d ed 1964) says "contraband" is property "prohibited or excluded" by law. The property here was of that kind a person usually legally possesses.

cious items. There was nothing inadvertent about the way they took suspicious items and left nonsuspicious items behind. This was not a simple inventory, it was a search and there was seizure.

In *State v. Elkins,* supra, the court noted that an officer may not simply take things an arrested person has regardless of the circumstances

"* * * upon the prospect that on further investigation some of it might prove to have been stolen or to be contraband. [If the rule were otherwise,] [i]t would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of a minute examination of it in an effort to connect him with another crime. Such a practice would be as much an exploratory seizure as one made upon an arrest for which no probable cause existed. Intolerable invasions of a person's property rights would be invited by an *ex post facto* authorization of a seizure made on groundless suspicion." 245 Or at 287-88.

In *State v. Elk,* 249 Or 614, 620, 439 P2d 1011 (1968), relied upon by the majority, it was said:

"* * * In determining the existence of probable cause, only those facts known to the officer prior to his alleged search may be considered, because of the rule that an unlawful search is not made lawful by the evidence of crime which it brings to light. *State v. Roderick,* [243 Or 105, 412 P2d 17, 243 Or 438, 414 P2d 351 (1966)]; *State v. Chinn,* [231 Or 259, 373 P2d 392 (1962)]."

The beer that was seized in *Elk* was evidence of another crime although the officer did not have knowledge that the beer had recently been stolen when it was seized. The court said:

"* * * [B]efore the newly discovered evi-

dence is seizable the officers must have a factual basis for suspicion of the newly discovered evidence." 249 Or at 623.

It quoted with approval from *State v. Elkins,* supra:

"'* * * [W]e believe the balance between the public and the individual requires some protection for individual property rights by way of at least a minimal factual basis for the officer's suspicion and resultant seizure of property unrelated to the crime for which the arrest is made. The plain wording of the constitutional mandate requires it.' * * *'" 249 Or at 623-24.

As the majority has noted, the court then went on to say:

"'* * * In the instant case the officers had probable cause to believe the car had been involved in a larceny; the fruits of the larceny were positively identified as such as a result of a lawful search; the fruits of the larceny were commingled with the beer in the trunk of defendant's car; and the beer was of a most unusual quantity (it filled the trunk of the car to within 6 inches of the body line of the trunk). The officers knew the defendant. These facts were sufficient cause upon which to base the officer's belief that the beer was stolen * * *.'" 249 Or at 624.

The evidence is less favorable to the officers' search in the instant case.

The officers here were not making a simple inventory, they were making a full-scale search. In *Elk* a specially concurring opinion noted:

"'* * * There is no inference that the officers used the right or duty to impound the car *as a subterfuge to search the car.*" (Emphasis supplied.) 249 Or at 626.

In the case at bar the facts are directly opposite.

On the favorable side, the officers here knew the defendant was wanted on a warrant for burglary. The items which they could see in the car were known to be the kind of items often taken in burglaries and appeared to have been "lightly thrown" into the car. On the other hand, the defendant was securely in custody; the officers had no knowledge of any property taken in any burglary; the vehicle was in a place on a business day in Portland where it could easily have been impounded; and a warrant could have been easily obtained by one of the numerous officers present to make the kind of search the officers wanted to and did make. In *Elk* there was at first only one officer in a remote area, and if he had gone for a warrant, as the court noted, the evidence could have vanished.

The vehicle itself was not an instrumentality of a crime, as was the case in *State v. McCoy,* 249 Or 160, 437 P2d 734 (1968), and *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). *Cf. State v. Walden,* 15 Or App 259, 515 P2d 407 (1973), Sup Ct *review denied* (1974). The officers should have asked themselves the questions suggested in *Keith:*

"(1) Do I have *probable cause* to believe that a search * * * will result in the finding of evidence of crime?

"* * * * *.

"(2) Do I have *probable cause* to believe that I must immediately search without taking the time to seek and obtain a warrant: (a) in order to protect myself (or others in the immediate vicinity), or (b) in order to avoid the loss of evidence, or (c) in order to prevent the escape of the accused, or (d) for any other reason which outweighs the need for the judicial surveillance over police activity which the search warrant provides?" 2 Or App at 142-43.

If police officers may make the kind of warrantless search and seizure they did in this case, and afterward the court sorts out for them some items they may use as evidence, there is a way to ignore the rule of *State v. Keller,* supra, which was pronounced by the Supreme Court of Oregon. If that rule is to be overruled, it should be done by the court that pronounced it.

I dissent.