Argued March 24, affirmed May 12, reconsideration denied
June 18, petition for review denied July 1, 1975

STATE OF OREGON, *Appellant, v.* SHANNON
LEE GIBBONS (No. 16-910), *Respondent.*

535 P2d 561

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

After being indicted for criminal activity in drugs, ORS 167.207, defendant moved to suppress evidence seized from her car following a stop of her vehicle without reasonable suspicion of criminal activity. The trial judge allowed the motion on the basis that "subjective suspicion" of the officer was insufficient to justify the stop. The state appeals pursuant to ORS 138.060(3).

The essential facts are: At about 2 a.m. on July 5, 1974, Officer White, of the city of Tillamook police department, was parked in a police car near the intersection of Main (Highway 101) and First streets in that city. He observed the car driven by the defendant to travel along First street then turn north on Highway 101 and proceed approximately 2 city blocks to the vicinity of a drive-in. The car then turned around and proceeded in a southerly direction along Highway 101, back to First street where it turned west and disappeared from view. A few minutes later, the same vehicle reappeared travelling east on First street to the intersection of Highway 101 where it made a right turn and proceeded in a southerly di-

rection for a distance of approximately 1½ blocks before the officer stopped it with the red light of his patrol car.

The defendant had violated no traffic laws. The car had a Washington license plate and was not known to the officer. There was nothing unusual about the manner in which the car was operated. However, at the suppression hearing, Officer White stated that defendant "appeared to be confused" and he testified further as follows:

"I just felt that she wasn't familiar with the city, and there might be something wrong this late and unusual hour of the morning: strange car, Washington license, patrolling the streets, the back streets, off of the main street."

Officer White testified that after stopping defendant's vehicle, he asked for her operator's license (while conversing through the car window which she had rolled down) and he could smell "a moderate odor of alcohol on her breath and a moderate odor of marihuana in the vehicle" (later described as "burnt marihuana"). Within the vehicle he also noticed four bottles in a paper sack and the odor of marihuana coming from the sack which defendant handed to him. Examination of the sack revealed "green vegetable material" that appeared to be marihuana.

The officer then asked defendant if he could look in the trunk and she said "yes" and opened the trunk which contained two full bottles of beer and a packsack with a 35 millimeter tin box which contained white pills and a pink pill, subsequently identified as amphetamines. Defendant was not placed under arrest until *after* discovery of the tin box which contained the contraband.

■ The central issue raised by this case is whether the original stop of the defendant's car was justified.

In dealing with this issue we are not unmindful of the need for thorough police investigative work. Crime prevention as well as apprehension of criminals is thereby aided. Yet, while we sympathize with the needs of law enforcement agents, we also recognize that they must operate within the bounds of law. This latter consideration compels us to find against the state in this case.

There is both case and statute law applicable to this case. We consider first the statute. ORS 131.615(1) states:

> "A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

ORS 131.605(4) and (5) state:

> "(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625.

> "(5) A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

■ The officer's compelling the defendant to stop at the side of the street fits squarely within the statutory definition of a stop (ORS 131.605(5)), thus bringing into play ORS 131.615(1) and ORS 131.605(4). Our question then becomes: Did the officer reasonably suspect that the defendant had committed a crime at the time he stopped the defendant? The evidence in the record compels a negative answer. To hold otherwise would give every police officer *carte blanche* to stop anyone he chose, in his own unbridled discretion. Nor does the statute authorize stopping someone just because the officer believes they may be

"lost." The facts of this case just cannot support a reasonable suspicion that the defendant had committed a crime. Tillamook is a vacation community. The time involved was the middle of summer, when visitors are abundant. In this context, to label the defendant's car "strange" is meaningless. The lateness of the hour should also be viewed in light of the date —July 5, or the night after July 4. We may take judicial notice of the fact that July 4 is a major national holiday, frequently accompanied by fireworks and other merrymaking (indeed, the defendant testified that she and her companion had been in Taft until about 11 p.m. for the fireworks there and were coming to Tillamook via the nearby community of Sand Lake). That a motorist from our sister state to the north chose to sojourn on the Oregon coast is not at all surprising but rather to be expected. These things, even taken together with a change of directions on the street (legally accomplished) do not suggest to a reasonable person that the driver of the vehicle has committed a crime. Most convincing of all on this point is the officer's own testimony:

"Q  But you said — I'll ask you again: Did you suspect that she was engaged in any criminal activity at that time?

"A  I didn't — I can't really say I suspected, because I didn't. She didn't show me any signs of any criminal activity. * * *"

The officer exceeded his statutory authority in making the stop.

The Criminal Law Revision Commission's Final Draft and Report on the Oregon Criminal Procedure Code (which includes the statutes considered here) commented on the section under consideration as follows:

"* * * [R]easonable suspicion that a person has committed or is 'about to commit a crime' is

the *condition precedent* to *any* interference of a person's liberty by a peace officer.

"* * * * *

"* * * [W]hen an officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is afoot and when he is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has 'reasonable suspicion' and hence can stop the individual for investigation.

"* * * * *." (Emphasis supplied.)

Proposed Oregon Criminal Procedure Code 26, Commentary, § 31 (1972).

Even without the statute, our case law leads to the same result.

■ If the officer does not have the right to be where he is at the time he finds the objects sought to be used in evidence, then the seizure is unjustified. *State v. Keller,* 265 Or 622, 628, 510 P2d 568 (1973); *State v. Sagner,* 12 Or App 459, 472, 506 P2d 510, Sup Ct *review denied* (1973). In this connection a passage from our decision in *State v. Evans,* 16 Or App 189, 193, 517 P2d 1225, Sup Ct *review denied* (1974), is relevant:

"* * * While the observation gave probable cause to believe that defendant carried contraband, it may be relied upon to support the search only if the observation occurred from a lawful vantage. If not, then the search is constitutionally impermissible. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *State v. Corbett,* 15 Or App 470, 516 P2d 487 (1973). [Sup Ct *review denied* (1974)]."

In the instant case, the officer's right to be where he was, at the time he smelled the marihuana, (and

hence have the probable cause requisite to a search) turns on the justification for the original stop.

The case law we find most pertinent is found in *Evans* where we said:

"* * * A holding of the person, no matter how minor, is a seizure within the meaning of the Fourth Amendment even though no arrest has occurred. As stated in *Terry v. Ohio,* 392 US 1, 16, 88 S Ct 1868, 20 L Ed 2d 889 (1968):

"'* * * It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person. * * *'" 16 Or App at 194.

In *Evans* we noted that *Terry v. Ohio,* 392 US 1, 16, 88 S Ct 1868, 20 L Ed 2d 889 (1968):

"* * * specifically holds that where there is not probable cause, but an officer sees a person acting in a suspicious manner, he may detain that person for a brief inquiry * * *." 16 Or App at 195.

In *Evans* we quoted from Mr. Justice White's concurring opinion in *Terry* as follows:

"'* * * There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. * * *'" 16 Or App at 196.

In *Evans* we also stated that:

"The police have no less right than any other person to approach another and make inquiry regarding circumstances of interest. * * * The encounter becomes subject to the restrictions of the Fourth Amendment, however, when the citizen's freedom of movement is restricted * * *." 16 Or App at 194.

This language suggests the crux of the distinc-

tion before us in this case. We do not deal here with a driver who while sitting in a car is approached by a police officer and asked a question. In such a case the person inquired of has in no sense been detained, or compelled to do anything. He may, if he wishes, ignore the officer altogether.

■ The distinguishing feature in this case is that the defendant was signalled by a police patrol car to pull over and stop; her compliance with this signal cannot be viewed as her own uncoerced choice. She was, in a real sense, compelled to submit to the officer's presence; she was detained. As we noted in *Evans,*

"* * * Restraint of liberty can arise either by means of physical force or show of authority, *Terry v. Ohio,* supra, 392 US at 19, n. 16, and the constraint of volition is equally real whether it arises by implication from the color of authority of the police or from their express command. * * *" 16 Or App at 196-97.

What defendant was detained for in this case can perhaps most accurately be described as an investigatory stop. In *State v. Head,* 13 Or App 317, 321-22, 509 P2d 52, Sup Ct *review denied* (1973), we stated the justification for an investigatory stop is a reasonable suspicion of a connection with criminal activity. To the same effect is *State v. Huddleston,* 5 Or App 9, 13, 480 P2d 454, Sup Ct *review denied* (1971). The record in this case shows clearly that at the time of the stop, Officer White had no reasonable suspicion of a connection with criminal activity —indeed the officer admits this himself.

The cases cited by the State in support of a contrary position are all distinguishable on their facts. In *State v. Lewis,* 10 Or App 378, 499 P2d 836, Sup Ct *review denied* (1972), the police were notified by a hospital that the defendant may have had a drug

overdose. The police spotted the car, stopped it, and the defendant agreed to return to the hospital, letting his companion drive. The police noticed that the companion was driving "erratically" and *after* she arrived at the hospital, questioned her about her driving. The police asked permission to check the steering; permission was granted. In doing so, they found evidence of a crime. In that case, contrary to this one, (a) the car was seen to be driven erratically, (b) the person being questioned was not detained in any way, and (c) there was no stop of the vehicle.

In *State v. Smith,* 10 Or App 557, 500 P2d 1217 (1972) the validity of the initial stop was not even discussed in the opinion. In his brief, the defendant mentioned the issue obliquely but focused the appeal on the existence of probable cause to search and arrest after the arresting officer had approached the defendant's vehicle. The officer testified that he learned shortly before stopping the defendant that a "smash and grab" had been reported at a store within about a mile of where the officer first noticed the defendant's car.

In *State v. Walton,* 18 Or App 603, 526 P2d 458, Sup Ct *review denied* (1974), stop of the vehicle was not involved. Rather, a deputy sheriff observed a vehicle blocking three lanes of Halsey Street in Portland at 3 a.m. In the car were three intoxicated persons, all unable to walk. As the deputy was removing the third occupant, a hard object was noticed on the occupant's person, which turned out to be a concealed weapon. The search that followed revealed illegal drugs.

In *State v. Childers,* 13 Or App 622, 624, 511 P2d 447, Sup Ct *review denied* (1973), there also was no question presented of a stop. Again, the vehicle was already stopped — at 1:20 a.m. on a boat ramp 10

to 15 feet from the Rogue River. Prior to that time, the car had been moving "very slowly" in a state park area. The deputy sheriff approached the car to ask a question and at that point thought he detected the odor of marihuana. The defendant also had slurred speech. The deputy then drove away without taking further action. Then, defendant also drove away and the deputy followed. The deputy then noticed that the defendant was in violation of ORS 483.406(2) (no light over his rear license plate). The deputy stopped the defendant and asked to see his vehicle registration which the defendant replied was lost. After defendant refused consent to search the car, the officers conducted an equipment check of the vehicle and found it had an inadequate hand brake. Thereupon the defendant was arrested because of the absence of registration and the inadequate hand brake. The car was towed away and in a subsequent inventory search of the vehicle, illegal drugs were found. In this case, then, what was thought to be the smell of marihuana was detected without the officer having stopped or in any way detained the defendant or his vehicle. When the car was actually stopped, there was clearly more than reasonable suspicion that a crime had been committed (no license plate light).

*State v. Bright,* 8 Or App 202, 493 P2d 757 (1972), concerned a case where, again, the car was already stopped; furthermore, there was no occupant. The car was discovered at midday on the shoulder of a mountain road in an unpopulated area. The vehicle had an out-of-state license plate. About two months before, the officer had recovered a stolen vehicle alongside the same highway in the same general area. The officer approached the car to investigate, considering the possibilities that the car was stolen or abandoned, that the car may be a key to someone in need of help, or that the car needed protection against

damage or theft. In the course of looking for the registration certificate, the officer discovered stolen goods. Clearly, no one was detained.

*Cady v. Dombrowski,* 413 US 433, 93 Sup Ct 2523, 37 L Ed 2d 706 (1973), also involved no question of stopping a vehicle. Defendant was a Chicago policeman who was arrested for drunk driving after he had a one-car accident. In searching defendant's car the next day for defendant's service revolver, the police found evidence of the crime of murder.

In all of these cases, except *Childers,* there was no stop of a vehicle nor detaining of a person in issue. In *Childers,* there was the license plate light "criminal connection" that justified the stop.

The state also cites *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). There the attack on the stop of the vehicle was based on lack of probable cause to stop. The Supreme Court explained that probable cause was not necessary to make such a stop but also held that

"* * * [T]he police can stop a car to determine the identity of the vehicle and its occupants *if they have a reasonable suspicion that the car or its occupants have a connection with criminal activity.*" 254 Or at 6. (Emphasis supplied.)

The Court found that

"* * * The officers in this case had reasonable suspicion to stop a light-colored 1959 Cadillac. They knew a light-colored 1959 Cadillac had been observed stopped where a truck was backed up to the garage of a residence at 4:00 a.m. unloading something and that large quantities of copper wire which appeared to be stolen had been found in such garage immediately thereafter and some men who had reputations as copper wire thieves were in the Cadillac. At 5:00 a.m., about

an hour after the first report, they observed a light-colored 1959 Cadillac about a mile from the place where the wire was found." 254 Or at 9.

Finally, the state cites *State v. Caproni,* 19 Or App 789, 529 P2d 974 (1974). In *Caproni,* the defendant vehicle was stopped and searched on the basis of an anonymous tip that two particularly described persons in a light green 1969 Ford van would park at a named location at a certain time and would begin selling baggies of marihuana. There was no evidence produced concerning the informant's reliability. Later, two men matching the description in a vehicle matching the description, stopped at the place named and at the time named. We upheld the trial court's suppression, finding the anonymous tip, though it later proved accurate, inadequate to meet the test of reasonable suspicion. In *Caproni,* we relied on *Cloman* as follows:

> " '* * * [T]he police can stop a car to determine the identity of the vehicle and its occupants if they have a reasonable suspicion that the car or its occupants have a connection with criminal activity. This "reasonable suspicion" we deem to be less quantum than probable cause to arrest. * * *'
>
> "* * *." 19 Or App at 791.

In all of these cases where the validity of the search had been upheld, the officer has had a right to be where he was when the evidence was observed or the probable cause leading to a warrantless search came to the officer's attention. In all the cases dealing with the stop of a vehicle, some reasonable suspicion of criminal connection was established.

These principles place the instant case in a different category. In this case, the officer had no right to be where he was and the detaining of the defendant was without suspicion of criminal connection. The officer's own testimony shows there was

no suspicion of criminal connection at the time of the stop. While the officer did, after making the stop, ask to examine the defendant's driver's license, this was not the purpose of the stop. We need not address the validity of a stop for this purpose here, and we expressly decline to do so.

Affirmed.

SCHWAB, C. J., dissenting.

The trial court's opinion cogently identified the issue in this case:

> "The question here is: Was the original stop of the defendant's car by Officer White justified? If it was, the fact that Officer White smelled the odor of alcohol and burned marijuana emanating from the car when he was talking to the driver through the open window of the car would have justified a warrantless search of the vehicle for both alcoholic beverages and marijuana.

> "If the stop of the defendant's car was not justified, the resulting search was not justified."

I would hold the stop of defendant's car to have been justified, and thus respectfully disagree with the trial court's and majority's contrary conclusion.

Were we writing on a blank slate, there would be much to be said for a rule that would permit law enforcement officers to stop any motor vehicle using Oregon highways at any time for any reason. The use and abuse of motor vehicles present unique contemporary problems, the subject of extensive attempted legislative control. *See,* ORS chs 481-486. But much of the attempted control is an empty gesture if, for example, the driver whose license has been suspended has a constitutional right not to be stopped and asked to display his license. Motorists using our highways are deemed to consent to "long-arm" service of process, ORS 15.190; such statutes have been held

constitutional. *Hess v. Pawloski,* 274 US 352, 47 S Ct 632, 71 L Ed 1091 (1927). Motorists using our highways are deemed to consent to certain chemical intoxication tests, ORS 483.634 et seq; such statutes have been held constitutional. *Heer v. Dept. of Motor Vehicles,* 252 Or 455, 450 P2d 533 (1969). Could it not likewise be concluded that motorists using our highways can be deemed to have consented to momentary detention sufficient to insure compliance with traffic control laws? *Cf., People v. Ingle,* 17 Crim L Rptr 2084 (NY Ct App April 1, 1975).

But the slate is not blank. *State v. Cloman,* 254 Or 1, 6, 456 P2d 67 (1969), holds that before law enforcement officers can stop a motor vehicle they must have "reasonable suspicion that the car or its occupants have a connection with criminal activity." *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), adopts substantially the same rule governing police stops of individuals afoot. Thus, I proceed on the assumption that, regardless of the possible merit of drawing a distinction, the constitutional rule applicable to motor vehicle stops and to stops of individuals not in motor vehicles is the same.

In applying the rule, I think it should first be clearly established that an officer's statement that he did not personally suspect criminal activity is not controlling. Just as we do not regard a policeman's statement that he does have grounds to search as necessarily controlling, e.g., *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975), we should not necessarily make a contrary statement controlling. Many of our cases so state or at least imply. *State v. Brewton,* 19 Or App 899, 529 P2d 967 (1974), Sup Ct *review denied* (1975); *State v. Evans,* 19 Or App 345, 527 P2d 731 (1974), Sup Ct *review denied* (1975); *State v. Holmes,* 17 Or App 464, 522 P2d 900 (1974); *State v. Childers,* 13 Or App 622, 511 P2d 447, Sup Ct *review*

*denied* (1973); *State v. Temple,* 7 Or App 91, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). *See also, State v. Cloman,* supra. The test should be: Would a reasonable person, knowledgeable or experienced in law enforcement, reasonably conclude from the facts perceived by the officer that there was a basis for a search or stop. In short, the test should be an objective one based on a reasonable-person standard, rather than a subjective one based on the conclusions of the individual officer.

The question then becomes whether the facts confronting an officer give rise to authority to search based on probable cause or authority to stop based on reasonable suspicion.

The facts are almost always capable of alternative interpretations. For example, a driver going around the block late at night in a residential neighborhood, as the defendant did in this case, could be looking for a house to burglarize or could be looking for an open gas station. And an individual walking back and forth on the sidewalk repeatedly looking in a store window—the facts of *Terry v. Ohio,* supra— might be planning a robbery or waiting to meet a friend. We say the facts need not indicate criminality beyond a reasonable doubt in order to establish probable cause to search. *State v. Dills,* 19 Or App 702, 528 P2d 1354 (1974). And we say reasonable suspicion authorizing a stop is something less than probable cause. *State v. Caproni,* 19 Or App 789, 529 P2d 974 (1974). But defining the authority to search or stop by negation leaves something to be desired.

Remembering that facts can be capable of alternative interpretations, I think the better way to articulate the test is: (1) if the facts, evaluated ob-

jectively, indicate that it is as likely or more likely that a person has committed a crime and possesses evidence of that crime, this constitutes probable cause to arrest and search; (2) if the facts, evaluated objectively, indicate there is any reasonable possibility that a person has committed or is about to commit a crime, this authorizes a *Terry*-type momentary stop of a motor vehicle or of an individual.

Applying the second half of that rule here, I think a reasonable person would conclude there was a possibility that defendant was about to commit a crime; this authorized the stop of her car. Defendant changed directions a couple of times on Highway 101, punctuating her driving by excursions onto side, residential streets. It was very late at night. There had been burglaries in the area.

The majority states, "There was nothing unusual about the manner in which * * * [defendant's] car was operated," 21 Or App at 341, and concludes, "The facts * * * cannot support a reasonable suspicion that the defendant had committed a crime," 21 Or App at 343. On the law, *Terry* tells me a stop is permitted based on a reasonable possibility defendant was *about* to commit a crime; whether there was a possibility defendant *"had committed"* a crime is an incomplete statement of the rule. On the facts, I simply disagree that there was "nothing unusual" confronting the officer here; I think defendant's late-night meandering through a residential area where burglaries had occurred was sufficiently unusual to authorize the stop of her vehicle.

I think that many of the decisions of this court, discussed by the majority, tend to support my conclusion. However, the majority distinguishes those prior decisions on the basis that they involved police officers approaching stopped motor vehicles,

whereas this case involves the stopping of a vehicle. I am not persuaded this distinction should produce a different result. Regardless of the theoretical accuracy of the majority's belief that the occupants of a car already stopped when approached by a police officer are free to "ignore the officer altogether," 75 Adv Sh 1681, looking to the realities, a "citizen's freedom of movement is restricted," *State v. Evans,* supra, 16 Or App at 194, as equally by being momentarily stopped as by being momentarily prevented from starting.

I would reverse and remand for trial.